MARSHALL COUNTY, Appellant, v. W. R. LIPPINCOTT, Guardian of the Estate of Michael Carmody, Insane.

Insane persons: SUPPORT. A board of supervisors has power under the statute to enter into a contract whereby the labor of an insane person, kept at the county poor farm, shall be accepted in partial satisfaction of his support and care.

*Appeal from Marshall District Court.*— HON. OBED CASWELL, Judge.

FRIDAY, MAY 10, 1907.

REHEARING DENIED MONDAY, JANUARY 20, 1908.

ACTION to establish a claim for the care and· maintenance of Michael Carmody, an insane person who has been kept by the county at its poor farm since 1878.    The county was allowed its claim in the sum of $120 and no more, and appeals.— *Affirmed.*

F. E. *Northup, J. L. Carney, G. W. Burnham,* and *Joseph H. Egermayer,* for appellant.

R. W. *Hargrave* and *C. H. Van Law,* for appellee.

SHERWIN, J.— Michael Carmody is the son of Peter Carmody, deceased, who by will left in trust the sum of $600 to be invested, and the income from which was to be applied to the maintenance ₒof Michael Carmody, who was adjudged insane and confined in the state asylum in 1857, where he remained until 1878, when he was transferred from the state hospital to the Marshall county poor farm, where he has since continuously resided.    Peter Carmody, his father, died some time subsequent to the 5th of July, 1878, leaving a will, one clause of which provided as follows:    " To the executor of this my last will, who will be named hereafter, the sum of $600 in trust for my son Michael Carmody, the same to be invested in some safe way, and the annual interest to be used for the maintenance of said Michael Carmody.    And the said Thomas Carmody shall assume the care of the said Michael Carmody as one of the conditions of this will, and at the decease of the said Michael Carmody, the said Thomas Carmody or his heirs shall inherit the said Michael's portion."    This action was brought to subject the earnings of the fund in question to the expense of the county for boarding and lodging Michael Carmody since 1878, when he was transferred from the state hospital to the county poor farm.    The defense interposed is that Michael Carmody was but slightly insane, and was always a harmless patient, capable of performing the

labor of an able-bodied man, and, such being the case, the trustee of the fund entered into an agreement with the board of supervisors of the plaintiff county whereby the trustee was to furnish clothing and tobacco for his ward, and the county was to accept the labor he was able to do in full payment for his board and lodging. The statute of limitations was also pleaded. There is evidence tending to show that an arrangement was made with the board of supervisors of the plaintiff county many years ago substantially as pleaded by the defendant, and that it had been carried out by subsequent boards and by the trustee of the fund until in 1905, when the arrangement was terminated by action of the board. From this evidence, the trial court found that such an arrangement had been made, and refused the plaintiff recovery on its claim for any time pror to 1905.

We think the fact finding is justified by the evidence, and hence the only question left for our determination is the legal one, whether the board of supervisors had authority under the statute to make such an arrangement or agreement with the trustee of the fund in question. Under chapter 52, Acts 26th General Assembly, the estates of all insane or idiotic persons are made liable to the county which furnishes treatment to such insane or idiotic person " for the reasonable value thereof," which value shall be determined in the first instance by the board of supervisors. When the Code of 1897 was adopted, the statute was changed in this respect. It provides that the estate shall be liable to the county for the reasonable expense of such care, or so much of such expense as may be determined by the board of supervisors. This provision in the Code of 1897 is practically a re-enactment of the last clause of section 1433 of the Code of 1873. That section provided for a charge against the estates of insane persons, and the section further provided that the board of supervisors might relieve the relatives of such insane persons from any part or all of the burden imposed by the other provisions of the sec-

tion.   It will be observed that under section 1433 the board of supervisors only had power to relieve the relatives or relatives' estates of this charge, while under section 2297 of the Code of 1897 the board of supervisors may determine whether the estates of persons legally bound for their support shall be charged with the full amount of such support. From an examination of these various statutes, it is apparent that it was the legislative intent to give to boards of supervisors authority to relieve these estates from full charges for the care of the insane.

The purpose of the Legislature was undoubtedly to enable an equitable adjustment of charges based upon conditions which were known to the county authorities; for instance, if a patient required but little attention and was able to perform as much manual labor as a person of sound mind, there is no sound reason why his estate or his relatives should be charged the full amount of the expense of keeping him in the asylum, if, in fact, he has performed work for the county which necessarily had to be done, and which was greater than the work necessary for his physical well-being.   If the county required the services of able-bodied men for work in and around its poor farm, and any of the insane inmates were capable of doing such work and did in fact do it for the benefit of the county rather than for the benefit of the patient's health, we see no reason why the county may not make at least partial compensation for such labor by an agreement through its board of supervisors. That it may be done under the present statute there can be no question, and we are of the opinion that such an arrangement could be made under former statutes.   It is true that Code (section 2244) provides that persons admitted to the poorhouse may be required to do " such reasonable and moderate labor as may be suited to their ages and bodily strength, the proceeds of which shall be appropriated to the use of the poorhouse in such manner as the board may determine."   But this provision evidently was not intended

to apply to insane patients with estates sufficient to pay for their care and keeping any further than the requirement of labor was necessary for the health of the patient. In other words, the Legislature did not intend to take all of the work of an able-bodied insane patient or to put him in the place of an ordinary farm hand, and in addition thereto charge his estate for the cost of his keeping. The section must, therefore, be construed in connection with the other sections of the statute to which we have already referred, and, when so construed, we think there is no difficulty in finding the legislative intent.

A point is made on the particular wording of Code, section 2297, and chapter 52, Acts 26th General Assembly. Under the latter act, the estate is made liable for the reasonable value of treatment, etc., while under section 2297 the estate is made liable for the reasonable expense; the word " expense " being used in the present Code in place of the word " value " used in chapter 52. We do not deem this change material in view of our conclusion, because the record shows as a matter of fact that the cost or the actual expense is the same as the reasonable value. Under a Massachusetts statute very similar in wording to our present Code, the Supreme Court of that State held in *City of Taunton v. Talbot,* 186 Mass. 341 (71 N. E. 785), that, where an inmate of an almshouse rendered services therein which diminshed the general expenditure to an amount equal to the cost of his support, no expense was shown to have been incurred for his support, and hence no recovery therefor could be had.

The judgment is *affirmed.*