THOMAS McCAFFREY vs. THE GROTON AND STONINGTON STREET RAILWAY COMPANY.

Second Judicial District, Norwich, April Term, 1912.
PRENTICE, RORABACK, WHEELER AND HOLCOMB, Js.

The plaintiff, as a subcontractor, agreed with one S to perform "the remainder of the overhead construction work" on the defendant's railway "according to the specifications," which were a part of the contract between S and the defendant, and under the direction of the defendant's engineers. Said specifications provided that "the intent of these specifications is to cover and include all labor and materials . . . necessary for the proper installation and equipment of the overhead work . . . between the terminals of the road. Any apparatus or appliances or labor not specifically mentioned or included that may be found necessary to perfect this work or which pertains to good practice of such construction shall be furnished and installed by this contractor just as if specified herein, and

McCaffrey *v.* Groton & Stonington Street Ry. Co.

without extra cost to the purchaser," and that "any claim for extra work due to change of location or grade or to any unforeseen cause, will not be allowed unless the same has been agreed upon in writing in form of a supplementary contract signed by the contractor and the engineers in which the price to be paid the contractor for said extra work is stated." This latter provision was not contained in a copy of the specifications handed the plaintiff by the defendant's engineers and upon which he submitted a bid for the performance of the work therein specified six months before the defendant made its contract with *S*. The defendant accepted an order upon it drawn by *S* in favor of the plaintiff for the consideration agreed upon by *S* and the plaintiff, which recited the making of the subcontract between *S* and the plaintiff and referred to said specifications and contract between *S* and the defendant. The plaintiff performed labor at the order of the defendant's engineers in excess of the requirements of good practice, and notified the defendant that he intended to hold it liable for the same. The defendant made no reply and its engineers continued to order further extra labor. *Held:*—

1. That by accepting the order drawn upon it by *S* in favor of the plaintiff, the defendant entered into direct contractual relations with the plaintiff, and though a subcontractor as to *S* he became thereby a principal contractor with the defendant.

2. That the plaintiff was chargeable with notice of the provisions of the contract between *S* and the defendant, and was not justified in relying upon the copy of the specifications he had previously received as a bidder. His lack of knowledge arose from his own neglect and not from a breach of duty owed him by the defendant.

3. That the words "unforeseen cause" meant a cause that was not foreknown, and since the extra work was not required by any change in the grade or location of the railway, or other circumstances or conditions unknown when the contract was executed, the plaintiff was not bound to pursue the method for securing payment for extra work prescribed in the specifications.

4. That the labor required, in addition to that specifically mentioned, must be limited to that necessary to procure such a reasonable degree of perfection as good practice in such construction demanded, and was not limited to that which in the judgment of the engineers was necessary to make the work absolutely perfect.

5. That if the plaintiff by reason of the defendant's conduct was led to believe that the latter would pay for said extra work and was so induced to perform the same, the defendant was liable for the reasonable value of said work under an implied contract to pay for the same; and that the finding of these issues in favor of the plaintiff was a waiver of the limitation imposed by the "extra-work" clause of the specifications.

6. That the defendant could not complain of an instruction that it was the plaintiff's duty to give notice of his claim for extras, when he had reason to believe that extras were being ordered for which he should claim payment, and that if he unreasonably delayed such notice he could only recover for extras furnished after the notice, but if he gave the notice as soon as he had reason to believe that extras were being required, such notice, if necessary, would cover the extras.

The court may assume as proven facts which were undisputed, and leave to the determination of the jury only those facts which were contested.

Compensation for labor in addition to that called for by the contract may be recovered under the common counts.

Mispleading is not a ground for setting aside a verdict and granting a new trial under § 805 of the General Statutes. Such a remedy is afforded by petition for a new trial under § 815 of the General Statutes.

Argued May 2d—decided July 19th, 1912.

ACTION by a subcontractor on the common counts to recover for alleged extra work done in the overhead construction of a part of the defendant's railway, brought to the Superior Court in New London County and tried to the jury before *Greene, J.;* verdict and judgment for the plaintiff for $2,580.60, and appeal by the defendant. *No error.*

*Charles W. Comstock* and *Lee R. Robbins,* for the appellant (defendant).

*Michael Kenealy,* for the appellee (plaintiff).

WHEELER, J. This is an action to recover for labor furnished, brought on the common counts, with a bill of particulars specifying the items of labor for which recovery is sought, to which a general denial is pleaded.

The defendant contracted with one Serrato for the overhead construction of the defendant's railway from Groton to the Rhode Island line in Stonington. Subsequently the plaintiff became a subcontractor of Serrato for a part of this work, agreeing with him to

perform "the remainder of the overhead construction work" on said railway "according to the specifications and under the directions of Messrs. Daboll & Crandall," the engineers for the defendant.

These specifications were a part of the contract between Serrato and the defendant. The defendant accepted an order upon it drawn by Serrato in favor of the plaintiff for the consideration agreed upon by Serrato and the plaintiff for the construction of said "remainder," and this order recited the making of the subcontract between Serrato and the defendant, and its performance according to the specifications of the contract between Serrato and the defendant and to the satisfaction of the engineers of the defendant.

The court correctly instructed the jury that through this order the plaintiff entered into direct contract relations with the defendant, and, though a subcontractor to Serrato, he became a principal contractor with the defendant.

This subcontract was intended to embrace the performance of a part of the original contract of the defendant with Serrato. Hence the plaintiff was chargeable with notice of the provisions of that contract, and is bound by such of its provisions as are applicable to the work required under the contract of the plaintiff and Serrato. *Shaw* v. *First Baptist Church*, 44 Minn. 22, 46 N. W. 146; *Green & Co.* v. *Jackson & Co.*, 66 Ga. 250.

One provision of these specifications was: "Any claim for extra work due to change of location or grade or to any unforeseen cause, will not be allowed unless the same has been agreed upon in writing in form of a supplementary contract signed by the contractor and the engineers, in which the price to be paid the contractor for said extra work is stated."

The plaintiff was therefore bound to secure payment for extras included within these specifications in the

manner therein provided, unless there were present something to take the case out of this limitation.

The defendant complains that the court took the case out of this limitation by instructing the jury, first, that the defendant could not avail itself of the defense that the plaintiff had not proceeded, in securing his claim for extras, in the manner provided by the specifications, because it had not pleaded this as a defense; second, that if the jury found the plaintiff did not proceed in this method, because misled by the defendant, recovery might be had despite such failure.

Neither ground is tenable. If the extras sued for come within this provision of the contract, it was essential that the plaintiff allege and prove compliance with it, since it was a condition of the contract precedent to a recovery.

The basis for the claim that the plaintiff was misled, rested in the fact that he had been one of the bidders for the work which Serrato secured; and in the copy of the specifications handed him by 'the engineers of the defendant this provision regarding the payment for extra work was omitted, though made a part of the specifications of the contract subsequently made between Serrato and the defendant. The plaintiff had no right to rely upon this copy, procured by him some six months before the defendant made its contract with Serrato. It was his duty to know the terms of the specifications made a part of his contract. His lack of knowledge arose from his own neglect, and not from a breach of duty owed him by the defendant. There was no possible basis on these facts for the claim that the plaintiff had been misled. Further, no such issue was raised by the pleadings.

The court instructed the jury that extra work claimed by the plaintiff was of such a character as to bring it within the extra-work limitation of, the specifications.

We cannot coincide with this view. The only claim for extras included within this limitation is that due "to change of location or grade, or any unforeseen cause." The extras claimed were for work done upon order of the engineers in setting additional and larger poles, and in furnishing certain gains and crossarms. There had been no change in the grade or location of the railway requiring such poles, gains, and crossarms. The only suggested reason for the ordering of these extras was, that because of the grades and curves their use would secure a better railway construction. The existence of these grades and curves was known at the time the contract was executed. "Unforeseen" limits cause, and means that the cause was not foreknown. 39 Cyc. 685. In this sense this extra work was not "unforeseen." *Hills* v. *Sughrue*, 15 Mees. & Wels. 253.

For this reason, rather than for those stated, we think the court was correct in refusing to comply with the several requests of the defendant to charge that the defendant's responsibility for extra work could not be sustained until the plaintiff had proven his compliance with the method provided for securing payment for extra work, and in instructing the jury in effect that that provision was inapplicable to the circumstances of this case.

The specifications provided for the spacing of the poles over the length of the railway; hence the number of poles required was known. It also provided for the size of the poles. It also provided: "The intent of these specifications is to cover and include all labor and material, except copper conductors, necessary for the proper installation and equipment of the overhead work of the Groton and Stonington Street Railway Company, between the terminals of the road. Any apparatus, or appliances, or labor not specifically mentioned or included that may be found necessary to perfect this work or which pertains to good practice

of such construction shall be furnished and installed by this contractor just as if specified herein, and without extra cost to the purchaser."

The reasonable construction of these somewhat contradictory provisions is that labor which the engineers may require of the contractor, in addition to that specifically mentioned, must be limited to that necessary to procure such reasonable degree of perfection as good practice in the construction provided for by the contract requires, and is not limited to the judgment of the engineers as to what they may think necessary to make the work absolutely perfect.

The court properly confined the recovery to such additional and larger poles and crossarms and gains as were called for beyond those required for securing a reasonable degree of perfection as good practice in such construction requires. To support a recovery, the jury must have found that these extras were furnished outside of and beyond the requirements of the contract, as interpreted by the court.

The charge was especially clear on this point as to each of these items. For example, as to the poles the court said: "Assuming that 306 is the number of poles erected in excess of the number required by 125 feet spacing, then, if you find that such a reasonable degree of perfection as good practice in such construction requires called for more poles than the number fixed by 125 foot spacing, but not for so many more as 306, deduct the excess over the number required by the 125 foot spacing from 306, and the difference will be the number of poles outside of the contract."

The defendant complains of the instruction as to the authority of the plaintiff to charge the defendant for labor which the jury might find was ordered and performed outside the contract. The court was right in saying to the jury that no express contract, written

or oral, between the plaintiff and defendant, had been proved for the payment of extra labor. Such a contract, if found proven, rested upon an implied contract. The jury might well have found: Under the contract with Serrato, the work was to be done to the acceptance of the engineers, and payments made, from time to time, upon the estimate of the engineers as the work progressed. The authority of the engineers in seeing that the work was performed in accordance with the contract was of the broadest. All of the work for which extras are claimed was done on the order and under the personal direction and supervision of the engineers. The work was of such a character that the plaintiff could not reasonably know that extras had been ordered, until it had been determined that work in excess of the requirements of good practice had been ordered. In the early part of the work the plaintiff told one of the engineers he was doing extra work for which he should be paid, but the engineer made no response. The defendant had given an executive committee of its directors full authority in the construction of this railway. The engineers of the defendant made full reports to them, and different members of the committee saw the progress of the work from time to time. When the work was in progress, the plaintiff sent the defendant, in care of the engineers, a letter, notifying it of his claim that he was doing, under orders of its engineers, extra work, and should hold it liable for the same. The defendant made no reply. In the early part of the work, the president of the defendant, and a member of the executive committee, told the plaintiff the engineers had authority to order the plaintiff in his work; and when the plaintiff was three quarters through the work he told the president that he was doing extra work, and the president replied: "If you're doing extra work, I suppose we'll have to pay for it."

The court instructed the jury that it was the duty of the plaintiff to give the defendant notice of his claim for extras as soon as he had reason to believe that extras were being ordered for which he should claim payment; and that if he unreasonably delayed such notice he could only recover for the extras furnished after the giving of notice; but that if he gave the notice "as soon as he had reason to believe that extras were being required, his notice would cover extras before as well as after the notice;" and that whether the notice was given as soon as practicable, under all the circumstances, was a fact for the jury.

Whether the giving of such notice was, under the circumstances, necessary to the plaintiff's case we do not decide; the defendant certainly cannot complain of the rule given. We do not see how it could have invoked a severer rule of duty.

The court charged the jury as to the authority of the engineer, and the implied contract arising upon the facts in evidence, as follows: "If the plaintiff was ordered by the defendant to do the work, and judging that extras were included in the defendant's orders, notified the defendant that he should require pay for extras, and the defendant made no reply to the notice, but continued to give orders including extras, the natural consequence of defendant's conduct would be to influence the plaintiff to expend his money on the extra labor, which he might not have done had the defendant upon notice refused to pay for extra labor; and if defendant's conduct, such as has been above supposed, in fact did induce the plaintiff to believe it, and to make expense which he would not otherwise have done, the defendant is chargeable with an intent to induce the plaintiff to do the extra work, and ought to pay for it.

"If you find that the defendant had previously ordered part of the work claimed to be extra done, and pend-

ing the doing of the work ordered received plaintiff's letter, Exhibit *C*, and continued after said notice to order the rest of the said work done, and that this work was needed by and useful to the defendant, and the plaintiff was before said notice expending money in doing this work, and continued after said notice so to expend money therein, in the belief that the defendant would pay for extra work, and the defendant was taking and continued to take the benefit of said labor, and has ever since held and enjoyed the benefit, it was the duty of the defendant, on receiving plaintiff's notice, Exhibit *C*, to inform him whether it would pay him for such labor as he had furnished or should furnish upon the order of their engineer, and which should prove to be extra, or else, if defendant kept silent, and by its silence led the plaintiff to believe that it would pay for extra work, and so induce the plaintiff to do extra work, it was defendant's duty to pay for such work as should be extra; and the plaintiff had a right to expect that defendant would pay him for such part of the labor furnished by him upon the order of Mr. Daboll as should prove to be extra, and to recover a reasonable price for the same."

These instructions fairly submitted to the jury the finding of the essential facts surrounding the claim of an implied contract together with the conclusion of the law upon their finding.

In *Casey* v. *McFarlane Bros. Co.*, 83 Conn. 442, 76 Atl. 515, we stated the rule thus: "To render the person or party for whom services are performed liable therefor as a debtor under an implied promise that they should be duly recompensed in money, it is essential to show that they were rendered under such circumstances as make it fairly presumable that the party allowing them to be rendered and receiving the benefit to be derived from them expected, or at least

ought to have expected, that they were to be paid for. Such a presumption arises in reference to any species of work, labor, or employment which is usually and commonly the subject of hire and reward, and to be paid for whether any specific bargain is or is not made concerning it. The plaintiffs have shown the facts necessary to enable them to avail themselves of that principle in support of their claim." *Mahoney* v. *Hartford Investment Corporation,* 82 Conn. 280, 286, 73 Atl. 766. The finding of the issues involved in these requests in favor of the plaintiff was a waiver of the limitation imposed by the "extra-work" clause of the specifications, and the court might with propriety have so stated to the jury.

We find no reasonable ground for the defendant's criticism of the charge "upon the taking away" of material questions of fact from the jury. Facts which were undisputed the court assumed as proven; facts which were contested it left to the jury. In these particulars the method adopted simplified the issues for the jury.

We agree with the defendant that the real questions involved in this case are, first, whether the work for which the plaintiff seeks a recovery is without his contract with Serrato; and second, whether the defendant is bound to pay for it. The first question was one of law upon facts undisputed; the second was determined by the jury favorably to the plaintiff. The motion to set aside the verdict as against the evidence is bare of merit.

The further ground of the motion—"mispleading"— is wholly novel under our practice. The contention is that a complaint under the common counts, for labor performed, can furnish no foundation for an action for extras for labor done outside of a contract for labor. This method of pleading is our every day practice.

The motion to set aside the verdict and for a new trial in this case was brought under General Statutes, § 805. Mispleading is not a ground for setting aside a verdict under this statute. A petition for a new trial for mispleading is a remedy provided by General Statutes, § 815. *Gannon* v. *State*, 75 Conn. 576, 54 Atl. 199; *Winchell* v. *Sanger*, 73 Conn. 399, 47 Atl. 706. A petition for mispleading, if brought under § 815, must have failed, because the case shows no mispleading, and the objection might have been taken earlier in the case. *Valente* v. *DeLucia*, 83 Conn. 474, 476, 76 Atl. 1006; *Winchell* v. *Sanger*, 73 Conn. 399, 404, 47 Atl. 706.

There is no error.

In this opinion the other judges concurred.