Argued November 4; affirmed December 14, 1937

IN RE PETERSON
STATE *v.* GRASSMAN
(74 P. (2d) 60)

*W. C. Winslow*, of Salem, for appellant.

*Joseph B. Felton*, Deputy District Attorney, of Salem (Lyle J. Page, District Attorney, of Salem on the brief), for the State.

BEAN, C. J. Anna B. Peterson was duly committed from Marion county, Oregon, to the Oregon State Hospital for the Insane, at Salem, Oregon, on December 13, 1927; on December 27, 1927, Agnes Grassman was regularly appointed guardian of the estate of Anna B. Peterson and duly qualified as such, and has ever since that time acted as guardian of such estate. At the time of the commitment this estate was of the approximate value of $6,000.

Anna B. Peterson was confined in the Oregon State Hospital at Salem until she was paroled on January 18, 1934. In the meantime, the 1931 legislative assembly of the state enacted chapter 187, Oregon Laws, 1931. This act became a law on June 6, 1931, and provides, among other things, that the estate, or certain designated relatives, of persons committed and confined in the insane hospital are required to pay to the state of Oregon a maintenance charge, placed by the statute at the rate of $20 per month. The act further provides that the terms thereof shall apply to persons already committed and confined in these institutions at the time the law became effective. This act was later amended by chapter 183, Oregon Laws, 1933; chapter 4, Oregon Laws, Sec. Sp. Session, 1933; and chapters 333 and 384, Oregon Laws, 1935. However, the amendments have no bearing on the issues in this case.

Notwithstanding the fact that the estate of Anna B. Peterson had on hand sufficient assets and had the ability to pay, Agnes Grassman, as guardian, refused to pay the state of Oregon the sum of $20 per month from June 6, 1931, to January 18, 1934. Thereafter, on

April 2, 1935, the district attorney of Marion county, on behalf of the state of Oregon, instituted in the county court for Marion county, Oregon, this proceeding to collect the same, the aggregate amount being in the sum of $628.67, whereupon the county court of Marion county issued a citation requiring Agnes Grassman, the guardian, to appear at a time and place specified and show cause why she, as guardian, should not pay from the assets of the estate of Anna B. Peterson the sum of $20 per month from the date the above named act became a law, to-wit, June 6, 1931, until the said Anna B. Peterson was paroled from the insane hospital on January 18, 1934. To this citation the guardian filed an answer alleging, in substance, that the said Anna B. Peterson rendered services to the state of Oregon while confined in such hospital, and that the reasonable value of said services was over and above the sum of $20 per month, which the law required her to pay the state of Oregon. The state of Oregon demurred to the guardian's answer on the ground that the answer failed to state facts sufficient to constitute a defense against the state's claim. The demurrer was sustained by the county court and the guardian refused to plead further; thereupon an order was entered requiring her to pay the sum of $628.67 from the assets of the estate to the state of Oregon. From this order an appeal was taken by the guardian to the circuit court of the state of Oregon for Marion county. The circuit court entered a decree affirming the order of the county court. From this decree the guardian appealed to this court.

The sole question to be decided is whether labor and services performed by an individual, while confined in the insane hospital in this state, can be set off against the maintenance charge of $20 per month, which the law requires the estate or relatives of such persons to

pay the state of Oregon, providing said estate or relatives have the ability to pay.

The guardian does not attack the legality of the commitment of Mrs. Peterson to the insane hospital nor does she dispute the amount of the claim of the state, other than that she claims it was paid by reason of services rendered. The constitutionality of the statute is not questioned by the guardian, other than as to the construction placed upon it by the state. The ability of the estate to pay the above amount is not denied.

■ Where the right to recovery by the state for the costs and expenses incurred in the care and maintenance of a person confined in the state insane asylum or hospitals is based on statute, in the absence of statute providing otherwise, no deduction can be made for labor of such persons while so confined: Ch. 187, Laws, 1931, and amendments; 32 C. J. 690, § 374; *In re Idleman's Commitment*, 146 Or. 13, 27 (27 P. (2d) 305) ; *Porter v. Eastern Kentucky Insane Asylum*, 121 Ky. 816 (90 S. W. 263).

■ This question depends entirely upon the statute of this state, as any power to create a liability upon the state treasury must be derived from the statute: 59 C. J. 193, § 335. Where the express statutory liability against the state does not exist the individual cannot recover on the theory of an implied contract for services rendered: *Sutton v. United States*, 256 U. S. 575, (65 L. Ed. 1099, 41 S. Ct. 563, 19 A. L. R. 403, 407).

■ Insane asylums and hospitals are established by the state primarily for the benefit of those whose mental condition is such that it is necessary for them to be confined. Such confinement is as much for the benefit of the individual who is confined as it is for the public at large. The incompetent and her immediate relatives receive a very valuable service from the state when she

is placed under the care of the state's trained psychiatrists, in an institution where her prospects for recovery, when present, are facilitated, and she is guarded and the public is also guarded from the dangers attendant upon her helpless condition. The contribution which the estate or relatives of such person is required by statute to pay can be considered in no other way than as reasonable and valid. There is no room for the provision to be deemed arbitrary: *In re Sprain's Guardianship v. State Board of Control*, 219 Wis. 591 (263 N. W. 648); *In re Sletto's Estate*, (Wis.) 272 N. W. 42. The contributions made by the taxpayers are for the benefit of the public. The small sum to be paid in support of such a patient by herself or her relatives is a personal benefit.

In considering the demurrer, and for that purpose only, it is admitted that Anna B. Peterson performed certain tasks and labor while confined in the Oregon State Hospital for the Insane at Salem. Such services were undoubtedly taken into consideration by the legislature in fixing the amount to be paid. The legislature could, if in its wisdom it saw fit, provide for credit to be allowed to a patient that renders services. The conception of the law is that it is better for the patient to be engaged to some extent and that such would tend to the amelioration of the patient's condition.

The statute does not allow an offset for these alleged services against the maintenance charge of $20 per month, which her estate is obligated to pay to the state of Oregon under the provisions of chapter 187, Laws, 1931.

The decree of the circuit court must therefore be affirmed. It is so ordered.

KELLY, BELT and BAILEY, JJ., concur.