STATE OF CONNECTICUT *v.* JEANNETTE V. NEWMAN, ADMINISTRATRIX (ESTATE OF ELLEN STEIN)

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued June 3—decided July 28, 1953

*Clement A. Fuller,* for the appellant (defendant).

*Ernest H. Halstedt,* assistant attorney general, with whom, on the brief, was *George C. Conway,* attorney general, for the appellee (plaintiff).

INGLIS, J. This action was brought to recover for the support of the defendant's decedent, Ellen L. Stein, while she was a patient in a state-maintained institution for the mentally ill. The defendant counterclaimed for the value of the decedent's services in the laundry of the institution. The trial court rendered judgment for the plaintiff on both the complaint and the counterclaim. On this appeal the defendant concedes that the estate of Ellen L. Stein is liable for her support and that the sum found due is the correct amount of the balance of the cost of the patient's maintenance at the hospital. The only basic contention made is that the trial court erred in refusing to set off against that amount the value of the patient's services as claimed in the counterclaim.

The court found, and was warranted in finding, the following facts: Ellen L. Stein was confined as a patient in the Fairfield State Hospital from April

14, 1941, until her death on November 10, 1949. The total cost to the state for her care and support during that time was $4728.23. The husband of the patient reimbursed the state to the extent of $2688.53, leaving a balance of $2039.70.

For a substantial part of the period of her confinement Mrs. Stein worked regularly in the laundry of the hospital at the request of the authorities in charge. It was the practice at the hospital to assign a limited number of patients to field and other activities within their mental and physical abilities, on the theory that such activities had a therapeutic value and tended to improve morale and readjust the patient to normal living. When patients were paid for such services the payments were of nominal amounts of $1 a week. Such payments were made only to those persons who had no other source of spending money and were solely for the purpose of building their morale. The assignment of patients to such work involved the employment of added paid supervisors to work in close contact with the patients but this added expense was deemed justified because the activity and the relief from the tedium of the ward was beneficial to the patients. It was in accord with this practice and policy that Mrs. Stein was assigned to work in the laundry of the institution. The work that she did was occupational therapy and a part of her treatment. It was of no substantial value to the hospital and no officer or employee of the institution represented to her that she would receive any compensation for it. On these facts the court concluded that the defendant was not entitled to any credit for the services so rendered against the claim of the plaintiff for reimbursement.

The defendant contends that the finding that Mrs. Stein's services were of no substantial value to the

hospital was not supported by the evidence. There was testimony to the effect that whatever the hospital saved by using the services of a patient instead of those of an employee was offset by the expense of necessary supervision of the patient while working. The defendant argues that this expense should not be offset against the value of Mrs. Stein's services because the expense of supervision was included in the charge made for her support. This argument falls because the cost of supervision charged to her was only the average cost per patient. The purport of the testimony was that the cost of supervising her while she was working in the laundry was far in excess of that.

This action was brought under § 2663 of the General Statutes. That section provides that when any person shall have been supported wholly or in part by the state in a humane institution "such person or his estate shall be liable to reimburse the state . . . for the amount expended by the state . . . for his support or benefit, and such amount may be recovered in a civil action in the name of the state . . . ." There is nothing in the statute which authorizes the allowance of a credit to the person supported or to his estate for the value of any services rendered by the patient. A few cases in other jurisdictions hold that such a statute precludes the reduction of the amount due to the state by any setoff such as a claim for services rendered. This is on the theory that the power to create a liability upon the state must be derived from the statute and where the express statutory liability of the state does not exist an individual cannot recover on the theory of an implied contract. *In re Peterson,* 157 Ore. 696, 699, 74 P.2d 60; *Porter v. Eastern Kentucky Asylum for Insane,* 121 Ky. 816, 820, 90 S.W. 263; 28 Am. Jur. 686, § 46; note, 114

A.L.R. 981. It is recognized, however, that if by statute a public official is either expressly or impliedly authorized by law to contract for the services of a patient, then the propriety of allowing such a credit is to be determined by the common-law principles relating to contracts and implied contracts. *Marshall County* v. *Lippincott,* 137 Iowa 102, 104, 111 N.W. 801.

In this state there can be no doubt that the superintendent of any hospital for the mentally ill has authority to employ workers for the operation of the institution's laundry and to bind the state to pay their wages. If he has the power to bind the state by an express contract it follows that he may also bind the state by an implied contract. Consequently, the decision of the present case is not to be controlled by the fact that § 2663 makes no provision for allowing any credit against the state's claim for the cost of supporting Mrs. Stein. The real question is whether the fact that the hospital authorities requested Mrs. Stein to work in the laundry, under all the circumstances, raised an implied contract against the state to pay for those services.

"To render the person or party for whom services are performed liable therefor as a debtor under an implied promise that they should be duly recompensed in money, it is essential to show that they were rendered under such circumstances as make it fairly presumable that the party allowing them to be rendered and receiving the benefit to be derived from them expected, or at least ought to have expected, that they were to be paid for. Such a presumption arises in reference to any species of work, labor, or employment which is usually and commonly the subject of hire and reward, and to be paid for whether any specific bargain is or is not made con-

cerning it." *Casey* v. *McFarlane Bros. Co.,* 83 Conn. 442, 443, 76 A. 515; *McCaffrey* v. *Groton & Stonington Street Ry. Co.,* 85 Conn. 584, 593, 84 A. 284. Although work in a laundry is, as a matter of common knowledge, usually performed for hire, the court has found that the work assigned to and performed by Mrs. Stein was a part of the therapeutic treatment designed to promote her morale and aid in her cure. Her labor was required, not primarily for the benefit of the hospital, but for her own welfare. Under such circumstances, it could not be presumed that the hospital authorities expected or ought to have expected that she would be compensated for her services. It necessarily follows that no implied contract arose and that the court was correct in refusing to allow a setoff for her services. *Estate of Stobie,* 30 Cal. App. 2d 525, 531, 86 P.2d 883; *In re Guardianship of Buck,* 140 Iowa 355, 358, 118 N.W. 530.

There is no error.

In this opinion the other judges concurred.