No. 39,239

In the Matter of the Estate of O. R. Kline, Deceased. (THE STATE DEPARTMENT OF SOCIAL WELFARE, *Appellee*, v. WALTER C. KLINE, Guardian, *Appellant*.)

(267 P. 2d 519)

Opinion filed March 6, 1954.

*J. Howard Wilcox,* of Anthony, argued the cause and was on the briefs for the appellant.

*Charles V. Hamm,* of Topeka, argued the cause, and *Harold R. Fatzer,* attorney general, *Paul E. Wilson,* assistant attorney general, and *Hart Workman* and *James S. Engle,* both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The state department of social welfare filed a claim pursuant to the provisions of G. S. 1951 Supp. 59-2006 against the estate of O. R. Kline, an insane person, for whom Walter C. Kline was the duly appointed and acting guardian. Claim was for the maintenance, care and treatment of the patient. It was allowed in the probate court and the guardian appealed to the district court. The latter court also allowed the claim.

A pretrial conference was held in the district court, which will be referred to presently. There, however, is no appeal from any finding or order made in that conference. The sole appeal is from the order of the trial court sustaining plaintiff's demurrer to certain paragraphs of defendant's answer.

In order to determine the validity of that order we are obliged to examine not only the demand and the alleged defense but also the record of the pretrial conference.

Appellee's claim or demand was for the maintenance, care and treatment of the patient from the date of his commitment to the Larned State Hospital on November 14, 1929, to May 8, 1952.

The first paragraph of defendant's answer was a general denial of the demand. Paragraphs 2 and 3 of the answer were:

"2. That O. R. Kline was committed to said institution on the 14th day of November, 1929; was immediately required to work, first as a cook, and later as a night watchman, and has been gainfully employed all of the time that he has been in said institution.

"3. That on the 1st day of August, 1942, this patient was placed on the pay roll of the Larned State Hospital and has remained on the pay roll since that date. That said patient has earned wages in excess of the amount of $12.00 per week, during this entire period, over and above his actual expenses for care and maintenance in said hospital."

The record of the pretrial conference reads:

"After admissions, submissions and discussions the following stipulations and orders are made:

"It is stipulated that O. R. Kline, an incompetent, was confined by order of the Probate Court of Harper County, Kansas, November 14, 1929, and since has been a patient in the Larned State Hospital.

"It is stipulated that the guardian has made no payments by cash or check to the institution or State Department of Social Welfare, attorney for the guardian reserving the question as to whether O. R. Kline's employment or services have been an offset to these charges.

"Attorney for the guardian stipulates that the verified account of the Department of Social Welfare is mathematically correct insofar as it reflects the statutory charges for the time covered, reserving the question of offsets for services performed.

"Claimant admits that O. R. Kline performed services at the hospital during the time he has been a patient there and that on August 1, 1952, was being paid $20 per month for work performed, part of the time he was not paid and the amounts of pay varied, denying that he was in any sense an employee or that his services are in any way offsets against the charges made by the State of Kansas.

"Case stricken from the jury list."

Thereafter appellee filed the following demurrer to appellant's answer:

"1. That said Plaintiff demurs to the *second* and *third* allegations of the Defendant's Answer, filed herein, for the reason that both of said allegations do not state facts sufficient to constitute a defense to the Plaintiff's claim." (Our italics.)

The demurrer was sustained. Before considering the merits of that ruling it may be well to direct attention to the fact appellant contends the date of August 1, 1952, on which the patient was being paid $20.00 per month for work performed, as stated in the pretrial stipulation, is incorrect. Appellant contends that date should be August 1, *1942*, as alleged in his answer. Touching that particular point the trial court's memorandum reads:

"As to the cash payments, it is claimed that the patient was placed on the pay roll on August 1, 1942, and has since remained on the pay roll, but the stipulation as to cash payments made relates to August 1, 1952, which is subsequent to the claim filed herein."

The instant claim was filed June 18, 1952.

We, of course, are obliged to adhere to the record on the matter of stipulated facts. If that was inaccurate it should have been corrected in the district court. We, however, doubt that the matter of those dates is very important here. The date of August 1, 1952, as shown in the record of the pretrial conference, pertained to appellee's admission, which can hardly be said to be binding on appellant who, in his answer, alleged the patient was placed on the pay roll on August 1, 1942. On the other hand, on the basis of the pretrial record before us, appellant cannot properly contend appellee admitted the patient was receiving $20.00 per month on August 1, 1942.

In any event and in order not to confuse the issue, we emphasize the question here is on a demurrer to paragraphs 2 and 3 of defendant's answer. Those allegations on a demurrer must be and are admitted to be true. In addition thereto we must, however, also consider facts admitted by appellant in the pretrial conference. Appellant frankly concedes the general denial contained in paragraph 1 of his answer is not operative as against those admissions. They include the following facts: The insane patient was committed to the hospital November 14, 1929; the verified account filed by appellee is mathematically correct and reflects the statutory charges for the period of the claim, that is, until May 8, 1952, and that no payment has been made thereon by the guardian by cash or check.

Boiled down this simply means appellee's claim must be allowed in full unless appellant, an insane person, is entitled to recover for the value of work done while he was being maintained, cared for and treated for his malady by the state.

We shall first see whether the statutes provide for a setoff. G. S. 1951 Supp. 59-2006 compels appellee to maintain, care for and treat the patient entrusted to it. It does not prescribe the form of treatment to be administered. The legislature apparently intended to leave the nature and form of treatment in the sound discretion of appellee, except with regard to a few matters not here involved.

G. S. 1949, 59-2005 expressly provides:

"After such delivery, the patient shall be under the care, custody, and control of the department of social welfare until discharged by it or by a court of competent jurisdiction."

If appellee believed filling the long, lonely and confused hours of an insane person's life with some appropriate form of useful activity would constitute one beneficial form of treatment it undoubtedly had the right to employ it. There is no allegation in

appellant's answer that the services he performed were not actually adopted by appellee as one form of treatment.

The answer does include the statement appellant was placed on the pay roll and has earned wages in excess of $12.00 per week. For present purposes we may assume the work he performed would have cost that amount if performed by someone whose time and activities were not under the dominion and control of appellee. From such fact it, however, does not follow the work was not selected by appellee as a form of treatment. The fact appellant believed he was on the pay roll may have been an additional means of keeping him better satisfied with his new environment. The belief he was a useful person who was being entrusted with responsibility may have been the best treatment to keep him more contented. Appellee also may have believed these treatments would eliminate, or aid in dispensing with, numerous otherwise necessary and far less effective disciplinary measures.

G. S. 1951 Supp. 59-2006 compels persons therein named, including the guardian of an insane person committed to a state hospital, to pay for the maintenance, care and treatment of such patient. The duty under the statute to pay for maintenance, care and treatment of the patient is absolute and unqualified. No provision is contained in this or any other statute entitling a patient to offsets against the state for the value of labor or services performed while under appellee's care, custody and control. It, of course, was in the province of the legislature to have provided for such offsets had it intended to allow them. It did not do so.

Power to create liability upon the state treasury must be derived from the statute. Although the precise question here presented is one of first impression in this state it frequently has been held under similar statutes that absent express statutory liability imposed on the state a patient in its hospitals cannot recover on the theory of an implied contract for services rendered. (*In re Peterson*, 157 Or. 696, 699, 74 P. 2d 60, 114 ALR 978, 981; *Estate of Stobie*, 30 C. A. 2d 525, 86 P. 2d 883; *Porter, &c. v. Eastern Ky. Asylum for Insane*, 121 Ky. 816, 90 S. W. 263; *In re Guardianship of Buck*, 140 Ia. 355, 118 N. W. 530; *State v. Newman*, ____ Conn. ____, 99 A. 2d 110; 28 Am. Jur., Insane and Other Incompetent Persons, § 46; 44 C. J. S., Insane Persons, § 75 (d), p. 186.)

Appellant quite correctly contends some of the above cases were based on evidence that the work done by the patient was for his welfare and that the instant case involves a demurrer to certain

paragraphs of appellant's answer. As previously stated the answer does not allege the work performed was not one of the forms of treatment adopted by appellee and the form of treatment rested in the discretion of appellee. Officers of a public institution vested with discretionary powers are presumed to have exercised them in good faith until the contrary is alleged and proved.

The answer alleges no agreement with the guardian to pay the patient for the alleged services. We, therefore, are not concerned with the question whether such an agreement, if made, would be enforceable against the state. Nor does the answer allege an agreement with the insane person and, if attempted, that, of course, would not be binding on anyone.

Appellant also entertains the erroneous view that if the value of the patient's labor equaled the small statutory fee for maintenance, care and treatment the state would be fully compensated for the costs thereof. Such a view ignores capital investment for buildings, grounds, equipment and many other factors. (See cases above cited.)

Appellee reminds us G. S. 1951 Supp. 59-2006 also authorizes it to compromise certain claims. In view of the fact the ruling before us for review is on a demurrer to portions of the answer we shall not pursue that subject.

We think the demurrer was properly sustained on the grounds indicated. The judgment is affirmed.