**ROYAL SCHOOL LABORATORIES, INC., Plaintiff,**

v.

**TOWN OF WATERTOWN and Classen P. Perkins, Defendants.**

**Civ. No. 10225.**

United States District Court
D. Connecticut.

Jan. 5, 1965.

Arnold Bai, Goldstein & Peck, Bridgeport, Conn., for plaintiff.

Donald N. Vitale, Vitale & Mahaney, Waterbury, Conn., for defendants.

ZAMPANO, District Judge.

In this diversity action, Twombly Associates, Inc., a Massachusetts corporation, entered into a contract with the defendant Town of Watertown and its agent, defendant Perkins, chairman of the Watertown School Building Committee, for the furnishing and installation of certain science laboratory furniture and equipment in the Watertown High School. Plaintiff, a Virginia corporation, supplied and delivered equipment and furniture to the defendants pursuant to its obligations as a subcontractor and materialman under the contract.

Being unpaid and finding Twombly now in bankruptcy, plaintiff sues the defendants in contract and in tort. Counts 1 and 3 of the complaint seek recovery on theories of quasi-contract and *quantum meruit* respectively; count 2 sounds in tort and is based on the failure of the defendants to obtain a payment bond from Twombly for the protection of subcontractors and materialmen, as required

**952**

by Section 49–41 of the Connecticut General Statutes.

There is no dispute that the defendants received and are presently using the plaintiff's equipment and that the amount owed the plaintiff is $43,307.00. Moreover, defendants admit they have retained $59,628.62 which is due and owing for materials and services rendered under the contract with Twombly. However, they refused to pay a portion of it to plaintiff because of an alleged conflicting claim by the New England Merchants National Bank of Boston. In a separate suit also pending in this Court, Civil No. 10,650, the bank seeks recovery from the Town of Watertown in the amount of $59,628.62, based upon an assignment from Twombly to it of all proceeds due Twombly for work performed in the Watertown High School.

Plaintiff in the instant case has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants have filed a motion to dismiss for failure of the complaint to state a cause of action and a motion to interplead the bank, with related motions to consolidate this action with the bank's action, for leave to deposit money into court, and an order discharging the defendants from any further liability. The bank has filed no motion to intervene.

█ Initially it might appear appropriate to grant the interpleader, allow the defendants to deposit the money into court, discharge the defendants from further liability, and thereafter resolve the conflicting claims between the plaintiff and the bank. Sound public policy dictates where possible a municipality should be exempt from exposure of double liability in the interest of protecting taxpayers' money. On the other hand, justice demands safeguarding the rights of persons who render valuable services to a municipality, particularly when they do so with the expectation they are protected by statute from financial loss.

Weighing the competing interests of all the parties, and after careful review of the relevant authorities as well as the historical purpose of the applicable statutes, it is decided that the contentions between the plaintiff and the defendant in the instant case present independent and distinct claims from those of the bank in Civil No. 10,650 and therefore should be determined separately.

█ As indicated, in counts 1 and 3 of the complaint there are set forth causes of action in quasi-contract based on unjust enrichment and in *quantum meruit*. The plaintiff's claims for relief proceed on the ground that the contract purportedly entered into between the defendants and Twombly is void because of their failure to obtain a payment bond in the amount of the contract price as required by Section 49–41 of the Connecticut General Statutes (1958). In view of the invalidity of the contract plaintiff alleges that as a materialman it is entitled to recover the reasonable value of the supplies on quasi-contract theories.

Defendants concede their failure to obtain the statutory payment bond renders the contract void as a matter of law, City of Norwalk v. Daniele, 143 Conn. 85, 119 A.2d 732 (1955), but argue that no action can be maintained against the municipality on an "illegal contract" and, therefore, plaintiff should be denied recovery.

█ Defendants misconceive the legal difference between an illegal contract, that is, one *ultra vires*, and a contract authorized by law but void due to an irregularity or omission in form or execution. If a contract is unlawful, against public policy, or beyond the corporate powers conferred upon a municipality, there can be no recovery against the public corporation. But a municipality may be held liable for retaining the benefits under an imperfectly executed contract which was within its power to make. By application of the doctrines of quasi-contract, implied contract, ratification, unjust enrichment or estoppel, the

Connecticut courts have protected persons who, innocently and in good faith, render services or supply goods to another and are refused payment on technical contract defenses.

In Loomis v. Fifth School District, 109 Conn. 700, at page 704, 145 A. 571, at page 572 (1929), the Court stated that " * * * where a school district retains and uses school supplies and equipment purchased under invalid contracts, it is liable for their purchase price". Similarly, Vito v. Town of Simsbury, 87 Conn. 261, 265, 87 A. 722, 724 (1913), holds that, although a municipality is not liable on implied contracts which would be *ultra vires* if made in express terms, " * * * there is no reason, in the absence of statutory objection, why the general obligation to do justice should not bind a town so as to make it liable for the reasonable worth of a permanent improvement, constructed under an imperfectly executed contract, and retained by the town as part of a highway". See, also, Bartlett v. Raidart, 107 Conn. 691, 694, 142 A. 398 (1928); State v. Newman, 140 Conn. 214, 218, 99 A.2d 110 (1953); 154 A.L.R. 356 (1945).

In the instant case, the town has accepted and has retained the goods supplied by the plaintiff. No complaint is made of the quality of the equipment and the price is reasonable. Under the circumstances the defendants cannot now say "We shall not pay". Leverty & Hurley Co. v. City of Danbury, 7 Conn.Supp. 125 (1939). The plaintiff is entitled to judgment on counts 1 and 3 of the complaint.

Tort is the basis of recovery in count 2 of the complaint. Plaintiff contends that the defendants' failure to obtain the payment bond from Twombly was a tortious breach of a ministerial duty imposed upon them by statute for which they are liable in damages.

Section 49–41 of the Connecticut General Statutes provides in pertinent part:

"Before any contract exceeding one thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person, such person shall furnish to the state or such subdivision a bond in the amount of the contract which shall be binding upon the award of the contract to such person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in such contract for the use of each such person."

Initially, the Court must determine whether the defendants owed a duty to the plaintiff to obtain the payment bond, and, if so, whether they are liable in tort for their failure to do so.

There is no Connecticut case directly in point, and an extensive review of the authorities in other jurisdictions reveals that the issue is far from settled.

A compilation of the leading cases, through the year 1929, is found in 64 A.L.R. 679. The majority of the cases hold that failure of a municipality and its public officials to obtain a payment bond from a contractor for public work, as required by statute to protect subcontractors and materialmen, does not render them liable in tort to the subcontractors and materialmen for work done or materials furnished to the contractor. See, for example, E. I. DuPont De Nemours & Co. v. City of Glenwood Springs, 10 Cir., 19 F.2d 225 (1927); Newt Olson Lumber Co. v. School District, 83 Colo. 272, 263 P. 723 (1928). On the other hand, a few states take the view that the public body or its officials are liable to subcontractors and materialmen where there is a failure to exact the required statutory bond. Cowin & Co. v. City of Merill, 202 Wis. 614, 233 N.W. 561 (1935); Northwest Steel Co. v. School District, No. 16, 76 Or. 321, 148 P. 1134, L.R.A.1915F, 629, (1915). And one state, Florida has cases holding both ways. See, I. W. Phillips & Co. v. Board of Public Instruction, 98 Fla. 1, 122 So. 793, 64 A.L.R. 675 (1929); and compare

Warren for Use and Benefit of Hughes Supply Co. v. Glens Falls Indemnity Co., Fla., 66 So.2d 54 (1953).

■ Under these circumstances, this Court must look to the same sources which a Connecticut court would presumably consult in order to determine the law of Connecticut even though as yet unannounced by a Connecticut court. Deveny v. Rheem Manufacturing Company, 319 F.2d 124, 130 (2 Cir. 1963).

■ Section 49–41 originated in Chapter 118 of the Public Acts of 1917 as a result of the Supreme Court of Errors of Connecticut ruling, in 1909, that a mechanic's lien for materials furnished or services rendered did not attach to, and could not be enforced against, the public property of a state, county or municipality. Norwalk v. Daniele, supra, 143 Conn. at 86, 119 A.2d 732. The 1917 enactment provided that "[a]ny officer or agent contracting in behalf of any [town] * * * shall require from each contractor, as a condition precedent to the execution of a contract * * * a bond with sufficient surety *. * *," for the payment of laborers and materialmen. In 1941, the legislature changed the wording of the statute to its present form: "[b]efore any contract. * . * * is awarded to any person, such person shall furnish * * * a bond in the amount of the contract * * *". 1941, Supp. § 694F. The Court does not regard this change in language as significant in applying the requirements of the statute to the facts of the instant case. The duty of the public official to obtain the statutory payment bond remained the same under the newly adopted language as it did under the discarded language. See, Norwalk v. Daniele, supra, at 89, 119 A. 2d 732. It is probable the change was made in 1941 to conform to the wording of the Miller Act enacted by the federal government on the same subject in 1935. See, 40 U.S.C.A. § 270a.

■ Defendants maintain, however, that the duty imposed by the statute is a discretionary one for which there is no liability in its breach. The Connecticut law is to the contrary. In Norwalk v. Daniele, supra, the Court, in interpreting the statute in question, states: "[T]he furnishing of a bond is mandatory, and no valid contract could be made without compliance with this requirement." 143 Conn. at 89, 119 A.2d at 735. See, also, Leger v. Kelley, 142 Conn. 585, 116 A.2d 429 (1955); New Britain Lumber Co. v. American Surety Co., 113 Conn. 1, 5, 154 A. 147 (1931); Blake v. Mason, 82 Conn. 324, 327, 73 A. 782 (1909). In the instant case the statutory direction to the defendants to obtain the required payment bond from Twombly was mandatory and left no room for the exercise of discretion. The duty imposed was ministerial.

In tort law, the failure to perform a ministerial duty imposes liability only if the duty is owing to the individual plaintiff bringing the action. When the duty is general as owing to the public at large, it cannot be made the premise of an individual's action in tort. Stated another way, where a statute creates a duty for the benefit or protection of the public generally, a violation of the duty does not make the public body or employee liable to an individual. Redress, if at all, is by public prosecution, removal, or reprimand of the public official responsible. On the other hand, if the improper performance of the duty imposed will affect an individual, or a class of which the individual is a member, differently than it affects the public at large, liability will be imposed upon the municipal body and its employee. Leger v. Kelley, supra, 142 Conn. at 589–591, 116 A.2d 429; Conn.Gen.Stat. § 7–465 (1958); Assumption By Municipalities Of Liability For Torts Of Employees, 32 Conn.B.J. (June, 1958).

■ Section 49–41 provides for the furnishing of distinct types of bonds in the construction of a public work: 1) a payment bond and 2) a performance bond or similar security. The performance bond or security is designed to protect the public body from the failure of the contractor to perform or complete the work according to the contract. The

mandatory requirement of a payment bond, however, has as its primary purpose the protection of those in the position of the plaintiff-at-bar from the failures and insolvencies of contractors on public projects. It may also serve to encourage an increased number of competitive bids from subcontractors and materialmen because of the assurance of payment, but this is merely a secondary, indirect benefit to the public body.

Any doubt that the requirement of a payment bond is designed for the benefit of an individual such as the plaintiff is dissipated by the statutory language declaring its enactment was "for the protection of persons supplying labor or materials in the prosecution of the work * * *" on a public project. The Connecticut courts have long recognized that those who furnish materials and labor to a contractor on a public work should be assured of payment without defeat or undue delay. See, Pelton & King, Inc. v. Town of Bethlehem, 109 Conn. 547, 556 (1929).

This Court concludes, therefore, that there was a mandatory duty upon the defendants to obtain the payment bond as required by Section 49–41; that the duty imposed was ministerial; that the failure to do so was a breach of the duty directly owed the plaintiff and that the plaintiff has a remedy for its losses against the defendants in tort.

Inasmuch as the Court has found that the plaintiff has alleged and proven an actionable tort, there now remains the question whether there are defenses which would prohibit the grant of summary judgment. To be sure, such factual defenses as estoppel, contributory negligence and assumption of risk may successfully defeat the motion. But, contrary to the rules of practice in this State, Conn. Practice Book, Part II, secs. 120, 123, defendants allege no special defenses. In oral argument on the motion, defendants claimed at trial they "might" be able to prove the plaintiff was an agent of Twombly with implied notice that the bond had not been furnished. However, despite the additional time granted the defendants to challenge the plaintiff's claims, the allegation that the plaintiff was an independent contractor and materialman under the statute remains uncontroverted. A mere wistful hope on defendants' part that at trial they "might" adduce evidence to the contrary is insufficient. Engl v. Aetna Life Ins. Co., 139 F.2d 469 (2 Cir. 1943). On the state of the present record there is no evidence that the plaintiff is other than a subcontractor and materialman entitled to the full protection of Section 49–41.

Therefore, plaintiff's motion for summary judgment is granted, and plaintiff shall recover of defendants the amount of $43,307.00 and costs. Accordingly, defendants' motions are denied.