No. 23924.

In the Matter of the Estate of Robert B. Buzzelle, Robert B. Buzzelle, and Andrew Wysowatcky, Public Administrator v. Colorado State Hospital at Pueblo, Colorado, Claimant.

(491 P.2d 1369)

Decided December 27, 1971.

MICHAEL M. LADEN, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, RICHARD D. ROBB, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

ERROR is charged to the denial by the Probate Court

of Denver County of a set-off against a claim by the Colorado State Hospital in the Estate of Robert B. Buzzelle, Ward. We find no error and therefore affirm.

Robert B. Buzzelle had been adjudicated a mental incompetent in the year 1956. He spent intermittent periods in the state hospital for treatment of his mental illness until June 26, 1963, when he was granted a conditional release. Thereafter, on January 16, 1968, an order of competency was entered by the court.

The Colorado State Hospital made claim for $4,691.88 in Buzzelle's estate for care and maintenance of Buzzelle during the period from December 12, 1956, to June 26, 1963. The payment of this claim, which was admittedly valid, was refused by Buzzelle who asserted a set-off for services rendered by him to the hospital in an amount in excess of that owing the hospital.

An evidentiary hearing was held by the probate court which resolved the issue against Buzzelle, denying the set-off, and allowing the hospital's claim in full.

The evidence was undisputed. The record shows that from his initial hospitalization until June of 1963 Buzzelle worked at several different jobs while in the hospital, varying from food preparation and service to work in connection with cleaning and maintenance of the physical plant of the hospital. The performance of this work was optional with the patient and was done by him without promise or expectation of compensation; it was occupational therapy and a part of the general rehabilitation program. The total hours of labor or services performed by Buzzelle was estimated in excess of six thousand. The trial court found no statutory basis which would compel or authorize the payment for such services as claimed by Buzzelle.

 This is a matter of first impression in Colorado. The general rule appears to be that no deduction from the amount charged a patient for his care and treatment can be allowed for the value of labor or services performed by him while confined in the institution, unless

the statute expressly or by necessary inference so provides. *State v. Newman*, 140 Conn. 214, 99 A.2d 110; *In Re Kline's Estate*, 175 Kan. 864, 267 P.2d 519; *In Re Peterson*, 157 Ore. 696, 74 P.2d 60, 114 A.L.R. 978; *In Re Buxton's Estate*, 246 Wis. 97, 16 N.W.2d 399. Further, it is generally held that where services are required of a patient to keep him in good physical condition and for treatment purposes, they are generally not considered to be compensable. *In Re Stobie's Estate*, 30 Cal. App.2d 525, 86 P.2d 883; *Buck v. Thornley*, 140 Ia. 355, 118 N.W. 530. Here, Buzzelle testified he was not required to perform such services but that he was induced to do so in order to gain privileges and benefits directed toward his rehabilitation.

▮ The statute in effect at the time of Buzzelle's confinement and treatment, C.R.S. 1963, 71-1-16 and 17, contains no express language requiring compensation for such services, nor any language from which an inference necessarily should be drawn that the state should pay for such services. No other pertinent statutory provisions have been drawn to our attention which might otherwise compel a different conclusion.

▮ Buzzelle contends that the statutes governing the incarceration of persons convicted of crimes support his position. We disagree. Prisoners are required by express statutory language to perform labor and services for which they are paid after deducting an amount sufficient to pay the cost of maintenance of the convicts. C.R.S. 1963, 105-4-17; 105-5-1. There is no statutory compulsion requiring work, labor or services by medically adjudicated incompetents whose confinement is not for punishment but rather for treatment.

▮▮ Counsel for Buzzelle argues that a contract for payment for his services by the state arose when the hospital accepted his services. In order to imply a promise to pay for services rendered, there must be circumstances or conduct which reasonably warrant such an inference. 1 *A. Corbin, Contracts* § 18. Here, it is clear

that the services performed were optional and without expectation of compensation, as a part of the treatment program. This proposition was specifically rejected in *State v. Newman, supra,* and *In Re Buxton's Estate, supra.*

It is further contended that Buzzelle was unconstitutionally denied equal protection of the laws. As we understand his argument, the legislature by failing to provide for payment for a patient's labor and services has in effect created two different groups of inmates, one group which receives benefits of care and treatment without performing labor or services, and a second group which performs labor and services, receiving no consideration therefor, but only the same benefits of care and treatment. This argument is not persuasive in view of the fact that the performance of labor and services is optional and voluntary.

Lastly, Buzzelle contends that the practice of receiving labor and services from inmates at the Colorado State Hospital amounts to slavery and involuntary servitude in violation of the Thirteenth Amendment to the Constitution of the United States and Section 26 of Article II of the Colorado Constitution. A detailed consideration of this proposition is found in *Krieger v. State of New York,* 54 Misc.2d 583, 283 N.Y.S.2d 86. It was there held that states are not foreclosed from requiring that a patient perform certain chores without compensation if they are reasonably related to a thereapeutic program, even though the state may incidentally receive financial benefits from the performance of such work, and that such requirement does not violate the constitutional prohibition against involuntary servitude. It is only where the mandatory work programs are so ruthless in the amount of work demanded and in the conditions under which the work must be performed, and thus so devoid of therapeutic purpose, that a court could justifiably conclude that the patient had been subjected to involuntary servitude. Here, the work, which was

voluntarily performed by the patient, was not shown to be so onerous in amount or condition as to be reasonably characterized as involuntary servitude. Admittedly, it was related to a therapeutic program of rehabilitation.

Other arguments advanced as grounds for reversal do not merit discussion.

The judgment is affirmed.