[Civ. No. 2249.   Fourth Appellate District.—January 25, 1939.]

In the Matter of the Estate of WILBUR J. STOBIE, an Incompetent Person.   HOWARD H. LIPSEY, as Secretary of the Department of Institutions, etc., Respondent, v. FRANK A. SHACKFORD, as Guardian, etc., Appellant.

J. A. Chase for Appellant.

U. S. Webb, Attorney-General, Earl Warren, Attorney-General, and Jean Morony and Emery F. Mitchell, Deputies Attorney-General, for Respondent.

MARKS, J.—This is an appeal from an order directing the guardian of the person and estate of Wilbur J. Stobie, an incompetent person, to pay to the medical superintendent of the Stockton State Hospital of California, one thousand dollars "on account of the amount due said State Hospital for the care, support and maintenance therein of said Wilbur J. Stobie, an insane person, for the period of July 1, 1935, to July 31, 1937".

Wilbur J. Stobie was adjudged an incompetent person and committed to the state hospital at Stockton. He is permanently insane. His estate is of the value of about twelve thousand dollars.

On July 31, 1937, a petition was filed in the matter of the estate of the incompetent praying for an order directing the guardian to pay out of the estate the sum of one thousand dollars for the care, support and maintenance of the incompetent for twenty-five months. It was alleged that the sum of forty dollars per month was a fair and reasonable charge for such services; that such sum had been fixed and determined by the director of institutions with the approval of the department of finance as the charge to be made for

such services; that demand had been made on the guardian for the payment of that charge, and payment had been refused. The answer of the guardian denied that any sum in excess of twenty dollars per month was a fair and reasonable charge for such services and offered payment of that sum.

Provisions, pertinent here, for the payment of the costs of transportation of an insane person to a state hospital, for his care, support and maintenance there, were formerly found in sections 2176 and 2180 of the Political Code. The provisions of those sections have been reenacted into sections 6650 and 6651 of the Welfare and Institutions Code. Section 6650 of the Welfare and Institutions Code is identical in legal effect with the same provisions of section 2176 of the Political Code, which contained the following:

"The husband, wife, father, mother, or children of an insane person or inebriate, or the estate of such insane person or inebriate, shall be liable for the care, support and maintenance of any insane person or inebriate in a state hospital . . . "

Section 2180 of the Political Code, prior to its amendment in 1933 (Stats. 1933, chap. 893), contained the following:

"The monthly rate for the care, support, and maintenance of all insane persons at the hospitals for the insane and where there is liability to pay for such care, support and maintenance, shall be *the actual cost thereof as may be* determined by the director of institutions, with the approval of the department of finance, but not to exceed forty dollars per month payable in advance; . . . "

The italicized words were omitted from the amendment of the Political Code section in 1933 and from section 6651 of the Welfare and Institutions Code.

Counsel for appellant seriously contends that the omission of the words "the actual cost thereof as may be", from the amended section, and from the section of the Welfare and Institutions Code, renders the present enactment unconstitutional for the reason that it delegates to the director of institutions, subject only to the approval of the department of finance, the uncontrolled and unguided power to determine the amount to be collected for the care and control of insane patients.

In support of the foregoing argument appellant cites 11 Am. Jur. 947, sec. 234, 12 A. L. R. 1435, 54 A. L. R. 1104,

*Tarpey* v. *McClure,* 190 Cal. 593 [213 Pac. 983], and *Board of Administration of Illinois* v. *Miles,* 278 Ill. 174 [115 N. E. 841]. The force of those authorities is in accord with the ruling in the Tarpey case where our Supreme Court said:

"On the other hand, the legislature may, without violating any rule or principle of the constitution, confer upon an administrative officer a large measure of discretion, provided the exercise thereof is controlled and guided by rules prescribed therefor (*Arwine* v. *Board of Medical Examiners,* 151 Cal. 499 [91 Pac. 319]; *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539, 553 [37 Sup. Ct. 217, 61 L. Ed. 480, Ann. Cas. 1917C, 643, L. R. A. 1917F, 514]), even though, in exercising that discretion, he may be called upon to exercise judgment of a high order. (*Frasher* v. *Rader,* 124 Cal. 132 [56 Pac. 979]; *Cook* v. *Civil Service Com.,* 160 Cal. 589, 592 [117 Pac. 663]; *Suckow* v. *Alderson,* 182 Cal. 247 [187 Pac. 965]; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373 [103 Pac. 207].) . . . Thus the decision to levy or not to levy this assessment is committed wholly to the discretion of the engineer, and in the exercise of this discretion he is uncontrolled and unguided by anything to be found in the act. If the act had made it the mandatory duty of the engineer to issue warrants for these necessary expenses and the mandatory duty of the directors to levy an assessment to pay those warrants, then it might well be said that such assessment was in fact levied, not by the engineer or by the directors, but by the legislature itself. But where, as here, the power to decide whether or not a given tax shall be levied is committed to the uncontrolled and unguided discretion of an executive officer, it amounts to such a delegation of legislative power as is prohibited by the constitution."

Appellant admits that the quoted provision of the Political Code, prior to the amendment of 1933, was constitutional for the reason that the action of the director of institutions was then directed and controlled by the enactment of the legislature to a computation of the cost to the state of the care, support and maintenance of the insane person. A similar enactment was held constitutional by the Supreme Court of Idaho in *State* v. *Johnson,* 50 Idaho, 363 [296 Pac. 588], where it was said:

"The statute authorizes the commissioner of public welfare to collect, if the inmate has sufficient funds or property, the

'actual charges and expenses' for the 'care and safekeeping' of the patient, and the medical superintendent is limited in fixing the sum to be so recovered by the above provision. There is thus a guide for, and limitation on, his acts in this regard; the delegation of this duty is not a delegation of legislative authority.''

We cannot regard the omission of the quoted phrase from the present enactment as materially changing the force and import of the sections. Now, as heretofore, the estate of an insane person is only liable for his ''care, support and maintenance''. The state cannot engage in private or *quasi*-private business or make a profit from its hospital. (*Goodall* v. *Brite*, 11 Cal. App. (2d) 540 [54 Pac. (2d) 510].) Its agent is only authorized to collect for the ''care, support and maintenance of any insane person''. The statute makes the estate of the insane person liable for his care, support and maintenance only, which is but another way of saying that the liability is only for the cost of such service. As the state cannot make a profit from its care of patients in its hospitals the words used in the present statute rather clearly imply that the amount to be collected from the estate of the insane person must be limited by the cost of that person to the state. That cost should not only include the annual money expended but should take into consideration the capital investment, depreciation, and other such legitimate expenses of the state.

▆ Appellant urges that the statute is unconstitutional because it violates the due process of law guaranty of the Constitution. (Art. I, sec. 13, Const.) In considering this question in *Sherer* v. *City of Laguna Beach*, 13 Cal. App. (2d) 396 [57 Pac. (2d) 157], it was said:

''Due process of law does not entitle a person to have a hearing before any particular board, tribunal or court. It is satisfied if he be given a fair hearing upon reasonable notice before a board, tribunal or court having jurisdiction of the proceedings and the parties. As was said in *Ex parte Wall*, 107 U. S. 265 [2 Sup. Ct. 569, 27 L. Ed. 552: ' . . . ''Perhaps no definition'', says Judge Cooley, ''is more often quoted than that given by Mr. Webster in the Dartmouth College case: 'By the law of the land is most clearly intended the general law—a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his

life, liberty, property, and immunities under the protection of the general rules which govern society.' '' (Cooley, Const. Lim. 353.) The question, what constitutes due process of law within the meaning of the Constitution, was much considered in this court in the case of *Davidson* v. *New Orleans,* 96 U. S. 97 [24 L. Ed. 616] ; and Mr. Justice Miller, speaking for the court said: ''It is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has by the laws of the state a fair trial in a court of justice, according to the modes of proceeding applicable to such a case.'' ' (See, also, *City of Seattle* v. *Kelleher,* 195 U. S. 351 [25 Sup. Ct. 44, 49 L. Ed. 232].)''

The fact that this case is before this court is sufficient answer to appellant's argument of lack of due process of law. The statute requires the state to go into the superior court to collect the money due it. There the guardian is brought into court, after notice, and is given a tribunal in which to present his evidence and, in any lawful manner, resist the claim against the estate. A right of appeal from the judgment is given. Due process of law can require no more.

Lastly, appellant urges that there is no evidence in the record to support the judgment, and that the judgment is in excess of the actual cost to the state of the care, support and maintenance of the insane person.

The evidence is largely in the form of stipulations in which we find that the parties agreed that the monthly rate of forty dollars for the care of the incompetent was fixed by the director of institutions with the approval of the department of finance after an investigation of the assets of the estate of the incompetent and after an investigation of his requirements in the state hospital. It was also stipulated that the average per capita operating cost of the Stockton hospital for the fiscal year ending June 30, 1935, was $213.78 and that the state's capital investment in that institution was $3,288,478.15.

There is a presumption that an administrative officer, charged by the legislature with an administrative duty, will perform that duty in accordance with the Constitution and laws of the state of California. Such a presumption will prevail until it is attacked and some evidence presented that the officer has been guilty of dereliction and that the action

taken by him has been arbitrary or discriminatory. (*People* v. *Globe Grain & Milling Co.*, 211 Cal. 121 [294 Pac. 3].)

■ In the instant case there is no evidence upon which to base the conclusion that the director of institutions acted arbitrarily or discriminatorily in fixing the cost to the state of the care, support and maintenance of the incompetent. The stipulated average per capita cost of the hospital only represented the average cash expense to the state of maintaining each patient during the fiscal year ending June 30, 1935. The state has a large capital investment in the Stockton hospital. The actual cost to the state of maintaining each patient in that hospital should include consideration of this investment. Therefore, as appellant has failed in any satisfactory manner to attack the action of the director of institutions in fixing the cost of the care, support and maintenance of the incompetent at forty dollars per month "there is no basis for the intervention of this court". (*People* v. *Globe Grain & Milling Co., supra.*)

■ It is also suggested that the incompetent has been engaged in performing the duties of storekeeper in the hospital; that if such services were performed in private industry they would be worth thirty cents an hour. It also appears that those duties were part of the physical and medical treatment of the incompetent. Under such circumstances we cannot see what relation those services and their value can have to the questions before us. The value of his services cannot be offset against the cost of caring for the incompetent.

The order is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 20, 1939.