[Civ. No. 40429. Second Dist., Div. Four. Feb. 22, 1973.]

HOLLY S. BAUMAN, Plaintiff and Appellant, v.
ISLAY INVESTMENTS et al., Defendants and Respondents.

## COUNSEL

Henderson, Goodwin, Marking & Hornor, Henderson, Goodwin, Marking & Rogers and Robert E. Goodwin for Plaintiff and Appellant.

Patrick L. McMahon as Amicus Curiae on behalf of Plaintiff and Appellant.

Goux, Romasanta & Anderle and Thomas P. Anderle for Defendants and Respondents.

## Opinion

**KINGSLEY, J.**—This is a class action[1] on behalf of the past and present tenants in defendants' apartment buildings, to determine their rights in so-called "cleaning fees" collected by defendants on and after January 1, 1971, and not returned to the tenants.[2] Defendants' demurrer was sustained without leave to amend; plaintiff has appealed; we reverse.

The complaint alleges that all tenants in defendants' apartment building "on and after January 1, 1971," entered into a uniform written form of rental agreement which required them to pay, prior to occupancy, a sum of money as a "cleaning fee" and that they had paid such a fee; that the agreement provided that that fee was "nonrefundable";[3] and that none of it was returned on termination of the tenancies, although it exceeds the reasonable cost to defendants for cleaning apartments when they are vacated at the termination of each tenancy; and that such action violates section 1951 of the Civil Code (operative January 1, 1971) and entitled plaintiff to the relief provided in that section. We set forth, in Appendix "B" to this opinion, the text of the section involved. The portions of the section pertinent to this appeal are subdivisions (a) and (c), which read as follows: "(a) Any payment or deposit of money the primary function of which is to secure the performance of a rental agreement or any part of such an agreement, other than a payment or deposit, including an advance payment of rent, made to secure the execution of a rental agreement, shall be governed by the provisions of this section."

"(c) The landlord may claim of such payment or deposit only such amounts as are reasonably necessary to remedy tenant defaults in the payment of rent, to repair damages to the premises caused by the tenant, or to clean such premises upon termination of the tenancy, if the payment or deposit is made for any or all of those specific purposes. Any remaining portion of such payment or deposit shall be returned to the tenant no later than two weeks after termination of his tenancy."

---

[1] It is not presently contended that the action, if maintainable at all, is not a proper class action. Our reversal, of course, does not foreclose defendants from invoking the procedure set forth in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 820-821 [94 Cal.Rptr. 796, 484 P.2d 964].

[2] The complaint is in two counts: (1) on behalf of past tenants, seeking monetary recovery pursuant to subdivision (f) of section 1951 of the Civil Code, and (2) on behalf of present tenants, seeking declaratory relief. Since the issue raised relates only to the effect of the statute on defendants' form rental agreement, both causes of action stand or fall together as to this issue.

[3] We attach a photographic copy of the agreement as pleaded as Appendix "A" to the opinion.

## I

We dispose, first, of several contentions which seem to us to be clearly without merit:

(a) The fee herein involved is not "a payment or deposit . . . made to secure the execution of a rental agreement," as that term is used in subdivision (a) of section 1951. It appears from the face of the rental agreement that a rental deposit was also collected and that it was separately stated in the agreement. The fee herein involved was a "cleaning fee," as expressly so called; it stands or falls on that basis.

(b) The fee herein involved was not a provision for liquidated damages. Nothing in the agreement suggests any of the elements which the law imposes on such a provision. At oral argument, counsel for defendants expressly disclaimed reliance on that theory.

■ (c) In spite of the ingenious semantics displayed in the briefs, we see nothing vague or ambiguous in the word "secure" in subdivision (a) of section 1951—it clearly means that the "payment or deposit" is intended to protect the landlord against the possibility of damage from one or more of the possible tenant defaults or misconducts listed in subdivision (c) of section 1951.

(d) Despite the declaration of State Assemblyman Brown,[4] we must determine for ourselves, on the basis of ordinary standards of construction, whether the "nonrefundable" provision hereinafter discussed is valid in this case. ■ While official committee reports can be utilized to aid in statutory interpretation, the views of individual legislators are of little help in determining the intent of the Legislature as a whole.[5]

## II

■ Defendants argue that the statute, by its terms, involves only payments or deposits which are intended to secure "the performance of" a rental agreement and that the agreement herein involved imposes no obligation on a tenant to clean an apartment on termination of a lease. This was the contention accepted by the trial court. We disagree.

The agreement provides, as a "House Rule," that "1. It is agreed that

---

[4]Respondents have attached to their brief filed in this court a declaration by Assemblyman Willie Brown, Jr., one of the coauthors of the bill which resulted in the enactment of section 1951. We set forth that declaration in Appendix "C" to this opinion.

[5]Cf. *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 257 [104 Cal.Rptr. 761, 502 P.2d 1049].

the tenant is taking possession of this [rental] unit in good condition and will diligently maintain it." If the apartment is to be "maintained" in the condition it had when the tenancy originated, it follows that the tenant was under an obligation, not only to keep it that way during tenancy, but to leave it, on termination, in the same condition; otherwise the apartment would not have been "maintained" in good condition. The "cleaning fee" herein involved had no possible purpose but to protect the landlord against costs of restoring an apartment not "maintained" as the agreement requires.

## III

The chief contention by defendants is that the agreement expressly provides that the cleaning fee is "Non-Refundable." Defendants argue that the statute applies only to fees which a tenant could reasonably expect would be refunded, in whole or in part, if they were not needed to repair damage or to return an apartment to good and clean condition, and that it does not apply to fees which the tenant was told, in advance, would never be returned, no matter in how good a condition the apartment was on termination of tenancy. In support of that contention, defendants call to our attention the fact that section 1942.1 of the Civil Code (enacted at the same legislative session as § 1951), expressly prohibits a waiver of the protective provisions of section 1942 (which deals with the right of a tenant to withhold rent if an apartment becomes uninhabitable). From that legislative action they ask us to infer that, had the Legislature desired that the rights granted by section 1951 be nonwaivable, they would have included similar language in the new section. While the argument is legitimate, we are not persuaded by it. We do not know whether the addition of section 1942.1 was regarded by the Legislature as changing the previous law relating to section 1942, or as merely stating preexisting law and correcting a judicial error in interpretation of that section.

As an additional argument for interpreting the statute as permitting a waiver, counsel for defendants suggest that section 1951 was adopted shortly after a New York statute covering the same ground had gone into effect and that that statute did contain an express prohibition against waiver. From that premise, they argue that the omission of such a clause in the California statute was intentional. That argument also falls because there is nothing in this record to indicate that the California Legislature was aware of, or influenced by, the New York statute. As counsel for plaintiff point out, a closer prototype is to be found in a so-called "model" statute disseminated by the American Bar Foundation in 1969, which "model," like section 1951, is silent as to "waiver."

In short, the various arguments on the issue of legislative intent are of little or no help in the case at bench.

## IV

■ However, we conclude that we need not determine the issue of legislative intent because, even if we assume that, under some circumstances, a waiver might be permissible, the agreement before us does not meet established requirements for a waiver. The language relating to nonrefundability is, itself, sufficiently clear, and the words are prominently printed—so that plaintiff could not honestly claim ignorance of its presence; and she makes no such contention here. ■ However, it is settled law in California that a purported "waiver" of a statutory right is not legally effective unless it appears that the party executing it had been fully informed of the existence of that right, its meaning, the effect of the "waiver" presented to him, and his full understanding of the explanation.[6] ■ Nothing in the agreement before us approaches that kind of explanation. The bare word "nonrefundable," carries with it no necessary reference to section 1951 of the Civil Code or to the rights therein set forth. It cannot be said from the face of the agreement as pleaded that plaintiff intended to waive the statute's benefits, i.e., was aware of that statute or understood her statutory rights, or that any of the other conditions of a valid waiver of a statutory right were present. If there is available to defendants any evidence—either of other documents or of oral explanation—which would meet the test above set forth, they may plead it by way of answer.

## V

■ In a supplemental brief, defendants argue that Civil Code section 1951, if construed as we have construed it in subdivision (c) under rubric I above, would be unconstitutional as vague and as denying equal protection. The equal protection contention is frivolous; it cannot today be argued that the relation of landlord and tenant is not subject to regulation to prevent overreaching.

The other contention is equally unsound. Provisions for "reasonable" costs are familiar; the provision here should give no difficulty.

---

[6]As one example of that doctrine, see the discussion of a purported waiver of uninsured motorist coverage in *Hagar* v. *Elite Ins. Co.* (1971) 22 Cal.App.3d 505, 510, et seq. [99 Cal.Rptr. 423].

## VI

In light of the disposition we make of this case, we need not, and do not, reach the questions of the validity or the interpretation of subdivision (f) of section 1951 (dealing with penal damages). If the case does eventually reach the trial stage, it will be for the trial court to determine what relief is proper under the pleadings and proof as they then stand. ■ We do no more, by this opinion, than to decide that plaintiff's complaint alleges facts which, if neither denied nor explained, would entitle her to some kind of relief. It follows that it was error to sustain the demurrer.

The judgment is reversed.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied March 13, 1973, and respondents' petition for a hearing by the Supreme Court was denied April 19, 1973.

[See pp. 760-762 for appendixes.]