[L.A. No. 31931. Aug. 5, 1985.]

WILLIAM T. HITTLE, Plaintiff and Appellant, v.
SANTA BARBARA COUNTY EMPLOYEES RETIREMENT
ASSOCIATION, Defendant and Respondent.

---

COUNSEL

James R. Christiansen, Ronald E. Williford and Haws, Record & Williford for Plaintiff and Appellant.

Kenneth L. Nelson, County Counsel, and William R. Allen, Deputy County Counsel, for Defendant and Respondent.

Adrian Kuyper, County Counsel (Orange), and Donald H. Rubin, Deputy County Counsel, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**REYNOSO, J.**—We are asked to decide whether the decision of the Santa Barbara County Employees Retirement Association (hereafter SBCERA or Association) denying the request of William T. Hittle to be reinstated as a member of the Association for purposes of seeking disability retirement was properly upheld by the Santa Barbara County Superior Court. Specifically, we must decide whether Hittle waived his right to apply for disability retirement upon the withdrawal of his retirement contributions from the Association, and whether his petition for writ of mandate before the trial court was timely filed.

While it is well established that a county employee may apply for disability retirement only if he or she is a member of the county employees' retirement association (see Gov. Code, § 31720 et seq.; *Dodosh* v. *County of Orange* (1981) 127 Cal.App.3d 936 [179 Cal.Rptr. 804]), we conclude that the termination of such membership by the withdrawal of retirement contributions can be enforced only upon a showing that the decision was an informed one. We also conclude that Hittle's petition for writ of mandate was timely filed.

I.

Hittle began his employment as a heavy truck operator with the Santa Barbara County Public Works Department in July 1977. He became a member of the Association the following month. (See Gov. Code, § 31552.)

In September 1977, Hittle sustained a lower back injury while at work when he slipped as he dismounted from his truck.[1] His treating chiropractor, Dr. Richard Bluhm, authorized him to return to work on June 21, 1978.

---

[1] Although not in the record, counsel for Hittle stated at oral argument that Hittle had successfully pursued a workers' compensation claim. Counsel for SBCERA stated that information pertaining to workers' compensation claims is not generally made available to the Association.

However, within a week, on June 28, 1978, a second chiropractor, Dr. Ronald Kemp, recommended to Hittle that he not return to work until the last part of August, when he would be reexamined. On August 14, 1978, an orthopedic surgeon, Dr. W. Gordon Smith, reported to Hittle's attorney that Hittle was "[a]t the present time . . . totally disabled as a direct result of his industrial injury of September 21, 1977." The following month, on September 8, 1978, a doctor employed by Santa Barbara County, Dr. Dean Smith, reported to Santa Barbara County Special Services[2] that "as strenuous as [Hittle] described his work as a truck driver, it would be unrealistic to think that he would ever be able to return to that occupation."[3]

Meanwhile, Hittle had not reported for work after Dr. Bluhm's authorization, nor responded to a notice that his absence following this authorization provided grounds for termination under the county's civil service rules. SBCERA thereafter sent Hittle two form letters, in August and September 1978, notifying him that his contributions ($187.49) would revert to the retirement system fund after five years if he failed to provide for their disposition. These letters provided in full:

"According to our records, you have terminated your full time employment and have money on deposit with the Santa Barbara County Employees Retirement Association. [¶] *Unless you file an allowable deferred retirement election, you must claim a refund* of your contributions and interest within 5 years from the date of this notice, or such money will be deposited in and become a part of the fund of the retirement system. Thereafter, the fund shall not be liable to you for any portion of your contributions and interest. [¶] *Enclosed is a form for your use* in advising us as to the disposition of your retirement account. Please complete and return promptly. Contact our office if any additional information is required." (Italics added.)

The first of these letters was dated August 22, 1978, and enclosed a form entitled "Disposition of Retirement Contribution." Consistent with the letter, this form provided two options: (1) withdrawal from SBCERA and a complete refund of contributions and interest, *or* (2) for employees who had at least five years service or were transferring to a reciprocating retirement system, a deferred retirement election.

---

[2]According to statements at oral argument by counsel for the respondent, Santa Barbara County Special Services is a special division of the county that administers the workers' compensation program; it is distinct from SBCERA.

[3]In March 1981, Hittle underwent surgery. His surgeon, Dr. Strait, later noted that "it seems obvious to me that Hittle had a disc rupture at that time [when he failed to report to work] and could not return to work."

The second letter was dated September 29, 1978, three weeks after Santa Barbara County Special Services had received Dr. Dean Smith's letter indicating that it would be unrealistic for Hittle to return to his job. This second form letter bore the following handwritten notation: "Dear Mr. Hittle—if you have filed or intend to file for *disability retirement* you should not withdraw the above contribution. C. Bolt." (Italics added.) The option of filing for disability retirement was not set forth on the form entitled "Disposition of Retirement Contribution."

Limiting himself to the options provided on the "Disposition of Retirement Contribution" form, Hittle requested a refund of his retirement contributions by so indicating on the form, which he executed on October 4, 1978. Hittle received a warrant refunding him the amount of $187.49 on October 12, 1978.

Two and one-half years later, Hittle learned that he may have been eligible for disability retirement at the time he withdrew his contributions. On March 17, 1981, his attorney submitted a disability retirement application to SBCERA on Hittle's behalf. Apparently receiving no response, Hittle's attorney wrote to the county personnel director on June 1, 1981. He requested rescission of his client's "unjustified termination" and reinstatement of his benefits upon Hittle's return of his retirement contributions. The letter indicated that at the time Hittle was released by his chiropractor to return to work he was still "totally temporarily disabled." Enclosed were the reports of Drs. Kemp, W. Gordon Smith, and Strait.

The personnel director referred this letter to the director of the public works department. In letters dated June 22, and June 26, 1981, the director rejected Hittle's request on the basis that the additional medical reports did not provide timely satisfactory evidence of good cause for Hittle's absence. The director further stated that he continued to rely on the medical report of Dr. Bluhm, submitted by Hittle at the time of his termination.

On July 30, 1981, Hittle's attorney wrote a letter to the county treasurer, offering to return to SBCERA his client's contributions plus interest, in return for reinstatement of his right to request disability retirement. In a one-sentence letter dated August 20, 1981, the county treasurer notified Hittle's attorney that the retirement board had denied "your request for Mr. Hittle to redeposit his retirement contributions so that he might apply for a disability retirement."

A month and a half later, on September 15, 1981, Hittle's attorney wrote to the assistant county treasurer requesting reconsideration by the retirement

board of its decision. Enclosed were his client's declaration, the medical reports of several doctors (including each of those named above), and a formal points and authorities. On November 19, 1981, the assistant county treasurer, on behalf of SBCERA, replied simply that "[t]he motion was made seconded and passed that the Retirement Board would not accept the application of William T. Hittle for Service Connected Disability Retirement."

Hittle sought judicial review 85 days following the denial of his request for reconsideration. Pursuant to a petition for writ of mandate (Code Civ. Proc., § 1094.5), Hittle sought an order requiring SBCERA to allow him to redeposit his retirement contributions and to reinstate him as a SBCERA member with full rights to apply for disability retirement.

After reviewing the administrative record and hearing the arguments of counsel, the trial court exercised its independent judgment to determine whether the weight of the evidence supported the agency's findings. (Citing *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29].) The trial court held that the evidence did not support Hittle's assertion that he was ignorant of his rights to file for disability retirement when he withdrew his contributions, because respondent had placed him on "specific notice" of these rights by its September 29, 1978, letter. The trial court found that once Hittle withdrew his funds from SBCERA he was no longer one of its "members," and thus not entitled to file an application for disability retirement with that system. (Citing *Dodosh* v. *County of Orange, supra,* 127 Cal.App.3d 936, 938.) The trial court also concluded that SBCERA had not committed a prejudicial abuse of discretion in denying Hittle's request to regain his membership. Finally, the trial court held that as a "party" (within the definition of the SBCERA by-laws, art. IX, § B(2)) seeking to reenter the retirement system, Hittle was bound by the 60-day time limit for judicial review provided by article IX, section R of the SBCERA by-laws, and that his petition for writ of mandate was therefore untimely. Accordingly, the trial court entered judgment denying the petition for writ of mandate.

On appeal, Hittle contends that (1) his petition for writ of mandate was timely filed with the trial court, and (2) this court should independently weigh the evidence to conclude that (3) he did not knowingly waive his right to disability retirement at the time he withdrew his retirement contributions, primarily because SBCERA did not fulfill its fiduciary duty to disclose to him this option.

## II.

■ Though the issue of exhaustion of administrative remedies is not raised by the parties, it is a condition to the court's jurisdiction which must be addressed before turning to petitioner's contentions. (See, Deering, Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 6.18, p. 103, and cases cited therein.)

■ While the SBCERA by-laws do not expressly provide a procedure by which "prior" members may seek reinstatement in order to apply for disability retirement, or challenge a decision denying reinstatement, they provide generally "a procedure for acting upon applications for rights, benefits and privileges under the County Employees Retirement Law of 1937 . . . ." (Art. IX, § A.) This procedure requires that when an application for benefits has been rejected by the retirement board, it notify the applicant that he or she is entitled to an administrative hearing upon request. We see no reason why this procedure should not apply to permit an application by an individual who claims that his withdrawal of membership from the Association was based on SBCERA's failure to properly notify him of his rights and options within the system.[4]

We conclude, however, that Hittle was excused from exhausting this available administrative remedy. Hittle repeatedly sought relief from the appropriate administrative officials before filing this action in the superior court. Finally, when the board formally rejected Hittle's application, it did not advise him that any additional administrative review procedure was available to him. Under these circumstances, SBCERA could not—and does not—claim that Hittle's action should be barred by the exhaustion of remedies doctrine. (See *Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d at pp. 477-478.)

---

[4]The by-laws indicate that only an "applicant" may file an application for benefits and, upon the board's denial of benefits, request a hearing. The by-laws define an "applicant" as "a member of the County Employees Retirement System claiming benefits, rights or privileges under the County Employees Retirement Law of 1937 or any other person claiming such benefits through any member." (Art. IX, § B.) There is nothing in the by-laws to preclude the term "member" from including an individual whose membership status is the threshold issue presented by his claim for benefits under the County Employees Retirement Law.

Nonetheless, defendants do not contest the trial court's finding that Hittle was a "party" within the meaning of the SBCERA by-laws, specifically, "any person disclosed by the records of the retirement system or by the application to have an interest or possible interest in the subject matter of a hearing." (*Ibid.*)

Accordingly, we find both terms—"applicant" and "party"—to be sufficiently ambiguous that we cannot say as a matter of law that no further administrative remedy was available to Hittle. (See *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 477 [131 Cal.Rptr. 90, 551 P.2d 410].)

Thus, we conclude that Hittle's petition for writ of mandate before the trial court was not barred by a failure to exhaust administrative remedies. We now turn to an examination of petitioner's contentions.

## A. *Statute of Limitations for Seeking Judicial Review*

 Hittle contends that the 60-day limit for seeking judicial review specified in article IX, section R of the SBCERA by-laws (hereafter, Section R) constitutes a private statute of limitations that is contrary to law and therefore void.[5] He asserts that his petition for writ of mandate, filed with the trial court 85 days after SBCERA's denial of his request for reconsideration, was timely. We agree.

Section R, adopted by SBCERA on July 16, 1980, provides: "In those cases where the party or applicant is entitled to a judicial review of the proceedings before this Board, the petition to the court shall be filed within sixty (60) days from the date the notice of this Board's decision is delivered to the party or applicant, or served by mail upon him or his attorney."

This provision is contrary to the express provisions of Code of Civil Procedure section 1094.6, which permits, with one limited inapplicable exception, local agencies to adopt either a 90-day statute of limitations or remain subject to the longer statutory limitation periods governing regular civil actions.[6]

---

[5]We reject SBCERA's assertion that we need not reach this issue because the trial court heard and denied Hittle's petition for writ of mandate on its merits, not on the basis of timeliness. Rather, the trial court denied the petition both on its merits and as untimely filed.

[6]All further statutory references are to the Code of Civil Procedure unless otherwise indicated. Section 1094.6 (added by Stats. 1976, ch. 276, § 1, p. 581, as amended by Stats. 1983, ch. 818, § 3, p. 2972) provides in pertinent part:

"(a) Judicial review of any decision of a local agency other than a school district, . . .

"(a) Judicial review of any decision of a local agency other than a school district, . . . may be had pursuant to Section 1094.5 of this code only if the petition for writ of mandate pursuant to such section is filed within the time limits specified in this section.

"(b) Any such petition shall be filed not later than the 90th day following the date on which the decision becomes final. . . . [I]f reconsideration is sought . . . the decision is final for the purposes of this section on the date that reconsideration is rejected.

". . . . . . . . . . .

". . . (e) As used in this section, decision means a decision subject to review pursuant to section 1094.5, suspending, demoting, or dismissing an officer or employee, revoking, or denying an application for a permit, license, or other entitlement, or denying an application for any retirement benefit or allowance.

"(f) In making a final decision as defined in subdivision (e), the local agency shall provide notice to the party that the time within which judicial review must be sought is governed by this section. As used in this subdivision, 'party' means an officer or employee who has been suspended, demoted or dismissed; a person whose permit, license, or other entitlement has been revoked or suspended, or whose application for a permit, license, or other entitlement

Section 1094.6 represents the Legislature's response to the disparity between state and local agencies in the time prescribed for seeking judicial review of their administrative decisions. (See, generally, Note, *Review of Selected 1976 California Legislation* (1977) 8 Pacific L.J. 165, 247-249; see also *City of Sacramento* v. *Superior Court* (1980) 113 Cal.App.3d 715, 722, fn. 6 [170 Cal.Rptr. 75] (conc. and dis. opn. by Justice Carr).) Prior to the enactment of section 1094.6, local agencies simply followed the general statutes of limitation for the commencement of civil actions (see *Allen* v. *Humboldt County Board of Supervisors* (1963) 220 Cal.App.2d 877, 884-885 [34 Cal.Rptr. 232]), which is three years in the case of statutory liability (§ 338), and four years in all other cases unless otherwise specified (§ 343). Judicial review of the decisions of state administrative agencies, which are governed by the Administrative Procedure Act (Gov. Code, § 11370 et seq.), must be sought within 30 days. (Gov. Code, § 11523.)

In *Allen*, the Court of Appeal rejected the contention that all petitions for administrative mandamus, whether they sought to review the action of state or local agencies, must be subject to the 30-day limitation period prescribed by Government Code section 11523. The court stated that although the longer periods of limitation applicable to local agencies may be excessive and "obstruct the prompt and clear determination of the rights of litigants," these disadvantages did not "justify . . . holding that the Administrative Procedure Act covers administrative agencies clearly not within its ambit." (220 Cal.App.2d at p. 885.) Six years later, in *Conti* v. *Board of Civil Commissioners* (1969) 1 Cal.3d 351 [82 Cal.Rptr. 337, 461 P.2d 617], this court noted that many local administrative mandamus cases had found laches "for delays of far less than three or four years," indicating that the three- or four-year statutes of limitation applicable to the review of local administrative actions, "although suitable for a truly original mandamus action, is far too long for a proceeding which in substance is a form of appellate review of an administrative decision." (*Id.,* at p. 357, fn. 3.)

In response to this problem, the Legislature enacted section 1094.6, giving local agencies (other than school districts) the *option* of adopting, by ordinance or resolution, a 90-day limitation period for seeking judicial review of their administrative decisions. (See generally *Foster* v. *Civil Service*

---

has been denied; or a person whose application for a retirement benefit or allowance has been denied.

"(g) This section shall be applicable to a local agency only if the governing board thereof adopts an ordinance or resolution making this section applicable. If such ordinance or resolution is adopted, the provisions of this section shall prevail over any conflicting provision in any otherwise applicable law relating to the subject matter, unless the conflicting provision is a state or federal law which provides a shorter statute of limitations, in which case the shorter statute of limitations shall apply."

*Com.* (1983) 142 Cal.App.3d 444, 449-451 [190 Cal.Rptr. 893].) As the Legislative Counsel's Digest of Assembly Bill No. 82 (1975-1976 Reg. Sess.) Summary Digest, page 69, states: "Existing law establishes a maximum time limit for seeking review of administrative determinations of designated state agencies by means of administrative mandamus, but does not generally provide for such a limitation for that type of judicial review of decisions of local agencies. [¶] This bill would limit to 90 days following specified final decisions in adjudicatory administrative hearings of local agencies, as defined, the time within which an action could be brought to review such decisions by means of administrative mandamus. . . . [¶] This bill would apply to local agencies only if their governing board adopts an ordinance or resolution making it applicable."

Section 1094.6 permits local agencies to apply a shorter-than-90-day limitation period only if the shorter statute of limitations is a state or federal law. Section R does not come within this exception.

SBCERA has therefore exceeded its authority in adopting and seeking to apply a 60-day limitation period during which judicial review of their decisions may be sought. ■ The Legislature has jurisdictional authority to determine statutes of limitation. (*Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 615 [189 Cal.Rptr. 871, 659 P.2d 1160]; *Scheas* v. *Robertson* (1951) 38 Cal.2d 119, 125 [238 P.2d 982].) The legislation providing for the creation of local retirement associations (the County Employees Retirement Law of 1937, Gov. Code, § 31450 et seq.) makes no provision for the local promulgation of any statutes of limitation other than those provided by section 1094.6. (See, e.g., Gov. Code, §§ 31526, 31527, which set forth the permissible scope and content of local retirement board regulations.)[7] ■ "The administrative agency must confine itself to reasonable interpretation in adopting regulations for administration of its governing statute; if it goes beyond that, the legislative area has been invaded and the regulation counts for nought. [Citations.]" (*County of L.A.* v. *State Dept. Pub. Health* (1958) 158 Cal.App.2d 425, 437 [322 P.2d 968].) Moreover, a local regulation affecting the jurisdiction of state courts impermissibly intrudes on a legislative function. " 'It is well settled . . . that laws passed by the Legislature under its general police power will prevail over regulations made by [an agency] with regard to matters which are not exclusively [that agency's] affairs.' " (*Ibid.,* quoting *Tolman* v. *Underhill* (1952) 39 Cal.2d 708, 712 [249 P.2d 280].)

---

[7]Even if these statutes could be interpreted as delegating to local retirement boards the discretion to determine their own statutes of limitation, the absence of standards to guide such boards in exercising this discretion would render the delegation invalid. (See *Estate of Stobie* (1939) 30 Cal.App.2d 525, 528 [86 P.2d 883].)

As matter of policy, a 90-day limitation period suffices to keep stale issues out of court. Any shorter period would not further advance that purpose and might tend to impede the bringing of meritorious actions.

Since SBCERA did not adopt the 90-day limit of section 1094.6, the general statutes of limitation for commencement of civil actions govern, and Hittle's petition for writ of mandate was therefore timely filed.[8]

### B. *Standard of Appellate Review*

Hittle contends that this court should independently weigh the evidence in reviewing the decision of the trial court because this case (a) involves the deprivation of a fundamental vested right; (b) was not accorded an evidentiary hearing before the administrative tribunal; (c) was tried solely on the documentary record in the trial court; and (d) was decided by the trial court without the benefit of the statutory presumption set forth in Civil Code section 2235.

Ordinarily the decision of a trial court that has employed the independent judgment test in an administrative mandate proceeding will be reviewed on appeal pursuant to the substantial evidence test. (See, Deering, Cal. Administrative Mandamus, *supra,* § 15.25, pp. 280-281.)[9] We need not determine whether to depart from this rule in the instant case since, as discussed below, we conclude as a matter of law that there is no substantial evidence to support the conclusion that Hittle's withdrawal of his retirement contributions constituted a knowing and valid waiver of his right to apply for disability retirement. "Where the facts before the administrative

---

[8]Of course, had SBCERA adopted the 90-day limitation period of section 1094.6, Hittle's petition for writ of mandate (filed 85 days after the board's denial of his application) would still have been timely under the statute.

We also note that in contrast to SBCERA's failure to notify Hittle of its own statute of limitations, section 1094.6, subdivision (f) requires local agencies to provide notice to "a person whose application for a retirement benefit or allowance has been denied" that the agency has adopted the shorter limitations period of that statute.

Our disposition precludes the necessity of addressing Hittle's alternative argument that SBCERA was required to provide for the filing of late petitions for judicial review, for good cause, as part of the county's duty of good faith and fair dealing. (See *Faulkner* v. *Public Employees' Retirement System* (1975) 47 Cal.App.3d 731, 735-736 [121 Cal.Rptr. 190], decided before the enactment of § 1094.5.)

[9]In applying the substantial evidence test, "[t]he appellate court focuses on the findings of the trial court, rather than those of the administrative agency. [Deering, Cal. Administrative Mandamus (Cont. Ed. Bar 1966) § 15.25, pp. 280-281.] The judgment will be upheld if there is any substantial evidence in support of each of the trial court's essential findings; all contrary evidence will be disregarded on appeal (*ibid.*)." (*Thompson* v. *Department of Motor Vehicles* (1980) 107 Cal.App.3d 354, 358 [165 Cal.Rptr. 626]; see also *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309 [196 P.2d 20].)

body are uncontradicted, the determination of their effect is a question of law and the findings and conclusions of the trial court, whether the scope of review be the substantial evidence or independent judgment test, are not controlling on appellate review. [Citations.]" (See *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 545 [122 Cal.Rptr. 315].)

## C. *No Valid Waiver of Right to Apply for Disability Retirement*

Hittle contends that the trial court erred in finding that he knowingly waived his right to apply for disability retirement. The trial court's finding that Hittle was not ignorant of this right when he withdrew his retirement contributions was based on the court's determination that the handwritten notation on the second form letter Hittle received from SBCERA—which provided simply, "If you have filed, or intend to file for disability retirement you should not withdraw the above contributions"—constituted "specific notice" to him of his right to apply for disability retirement. We conclude that there is no substantial evidence to support the trial court's findings that SBCERA adequately informed Hittle of the existence of his right to apply for disability retirement and that Hittle was therefore apprised of this right when he withdrew his retirement contributions. Accordingly, we conclude that Hittle's withdrawal of his retirement contributions cannot be deemed to constitute a valid waiver of his right to apply for disability retirement.

Government Code section 31727.4 entitles any member of a county employees' retirement system who is retired for service-connected disability to receive an annual retirement allowance payable in monthly installments, equal to one-half of the employee's final compensation. A member of a county retirement system may be retired for disability upon proper application ". . . unless the member waives the right to retire for disability and elects to withdraw contributions . . . ." (Gov. Code, § 31721.)

"[I]t is settled law in California that a purported 'waiver' of a statutory right is not legally effective unless it appears that the party executing it had been fully informed of the existence of that right, its meaning, the effect of the 'waiver' presented to him, and his full understanding of the explanation." (*Bauman* v. *Islay Investments* (1973) 30 Cal.App.3d 752, 758 [106 Cal.Rptr. 889], fn. omitted.) "The first requirement of any waiver of statutory or constitutional rights, of course, is that it be knowingly and intelligently made." (*In re Walker* (1969) 71 Cal.2d 54, 57 [77 Cal.Rptr. 16, 453 P.2d 456]; see also *Jones* v. *Brown* (1970) 13 Cal.App.3d 513, 519 [89 Cal.Rptr. 651] ["the valid waiver of a right presupposes an actual and demonstrable knowledge of the very right being waived"]; and *People* v.

*Connor* (1969) 270 Cal.App.2d 630, 634 [75 Cal.Rptr. 905] ["One can waive only that of which he is aware and cannot waive that of which he is ignorant"].)

"The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver.' [Citation.] This is particularly apropos in cases in which the right in question is one that is 'favored' in the law . . . ." (*City of Ukiah* v. *Fones* (1966) 64 Cal.2d 104, 107-108 [48 Cal.Rptr. 865, 410 P.2d 369].) The right to a pension is among those rights clearly "favored" by the law. " ' "[T]he rule [is] firmly established in this state that pension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. . . ." ' [Citations.]" (*Eichelberger* v. *City of Berkeley* (1956) 46 Cal.2d 182, 188 [293 P.2d 1], quoting from *Cordell* v. *City of Los Angeles* (1944) 67 Cal.App.2d 257, 266 [154 P.2d 31]; cf. *Heaton* v. *Marin County Employees Retirement Board* (1976) 63 Cal.App.3d 421, 429 [133 Cal.Rptr. 809].)

Our inquiry must therefore be whether Hittle had a full understanding of his right to apply for disability retirement at the time he withdrew his retirement contributions. In his declaration submitted to the trial court, Hittle stated that "[a]t the time I withdrew the contributions, I had absolutely no knowledge of the fact that I might qualify for a service-connected disability retirement . . . At no time that I can recall had anyone ever told me that a County employee with less than five years of service credit had any form of retirement benefits. Had I been aware of the fact that a County employee who incurs a service-connected disability may apply for a service-connected disability retirement regardless of the length of employment, I would not even have considered withdrawing the $187.49 that the County was offering me."

Hittle's declaration is not only well supported by the record, but provides the only rational explanation for his decision to seek reimbursement of his retirement contributions. The "Disposition of Retirement Contributions" form that SBCERA twice directed Hittle to complete and return set forth only two options: withdrawal of his contributions, or deferred retirement. Since Hittle did not have five years service credit and was not transferring to a reciprocating retirement system, he did not qualify for deferred retirement. The handwritten notation did not explain that disability retirement

was distinct from deferred retirement, nor did it indicate that Hittle could be eligible for disability retirement with fewer than five years of service.

Experience tells us that an informed individual would not knowingly choose a reimbursement of $187.49 in retirement contributions rather than seek to obtain an annual allowance equal to one-half of his regular compensation for the remainder of his life. Surely Hittle, who did not seek other employment and continued to incur substantial medical expenses, would have sought disability retirement before March 1981 had he been aware of this option.

We therefore conclude that there is no substantial evidence to support the trial court's determination that Hittle was knowledgeable of his right to apply for disability retirement at the time he withdrew his retirement contributions. As SBCERA has not presented clear and convincing evidence to prove that Hittle waived this right, we cannot find an effective waiver pursuant to Government Code section 31721. (*City of Ukiah* v. *Fones, supra,* 64 Cal.2d at pp. 107-108.)

### D. *SBCERA's Fiduciary Obligations as a Pension Fund Trustee*

■■ ■■ ■■ ■■ We turn to the issue of SBCERA's fiduciary duty to fully inform its members, in this case Hittle, of their retirement options.[10] ■■ As concluded above, there is no substantial evidence to

---

[10]Although raised for the first time by Hittle in his petition for rehearing before the Court of Appeal, the issue of SBCERA's fiduciary duty to fully inform Hittle of his retirement options is properly before this court.

Issues raised for the first time on appeal or rehearing will normally not be considered. (*County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 513 [138 Cal.Rptr. 472, 564 P.2d 14] [rehearing before this court] app. dism. (1977) 434 U.S. 944 [54 L.Ed.2d 306, 98 S.Ct. 469]; *Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 340-341 [303 P.2d 738] [appeal]; *People ex rel. Dept. of Public Works* v. *Mascotti* (1962) 206 Cal.App.2d 772, 779-780 [23 Cal.Rptr. 846] [rehearing before Court of Appeal].) "The general rule confining the parties upon appeal to the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.' (*Panopulos* v. *Maderis, supra,* 47 Cal.2d at 341.)" (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) However, "the rule does not apply when the facts are not disputed and the party merely raises a new question of law. (*Burdette* v. *Rollefson Construction Co.* (1959) 52 Cal.2d 720, 725-726 [344 P.2d 307].)" (*UFITEC, S.A.* v. *Carter* (1977) 20 Cal.3d 238, 249, fn. 2 [142 Cal.Rptr. 279, 571 P.2d 990].)

Evidence relevant to the particular fiduciary obligation at issue here—SBCERA's duty to fully inform Hittle of his retirement options—was fully presented to the trial court. The central issue in this case—whether Hittle's decision to remove his retirement contributions constituted a valid waiver of his right to apply for disability retirement—necessarily involves a determination whether Hittle was fully informed of his retirement options; the two are flip sides of the same coin. SBCERA was therefore on notice that it should present at trial all

support the trial court's finding that SBCERA had placed Hittle on "specific notice" of his right to apply for disability retirement by its handwritten notation of September 29, 1978. This notation was inherently ambiguous and uninformative, and cannot be said to have satisfied SBCERA's fiduciary obligation to adequately inform Hittle of his membership options upon termination of his employment.

An employee who serves under a pension plan acquires a vested contractual right to a pension. (*Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180, 183 [265 P.2d 884].) "A pension plan offered by the employer and impliedly accepted by the employee by remaining in employment constitutes a contract between them, whether the plan is a public or private one, and whether or not the employee is to contribute funds to the pension. [Citations.] The continued employment constitutes consideration for the promise to pay the pension, which is deemed deferred compensation. [Citation.]" (*Hannon Engineering, Inc.* v. *Reim* (1981) 126 Cal.App.3d 415, 425 [179 Cal.Rptr. 78].) As a result, "[p]ension plans create a trust relationship between pensioner beneficiaries and the trustees of pension funds who administer retirement benefits . . . and the trustees must exercise their *fiduciary trust* in good faith and must deal fairly with the pensioners-beneficiaries. [Citations omitted.]" (*Ibid.*, original italics.)

The SBCERA officers, by the acceptance of their appointment, are voluntary trustees, within the meaning of Civil Code sections 2216 and 2222,[11] of the retirement plans available to the beneficiary-members of the Associ-

---

evidence pertaining to this issue, and it is a logical assumption that SBCERA did so. Surely, had SBCERA given Hittle "a handbook of rules or bylaws when he became a member of the retirement association" (dis. opn. at p. 397, *post*), which clearly set forth Hittle's retirement options, SBCERA would have presented this evidence at trial. The SBCERA bylaws which are contained in the trial record contain no reference to a retiree's options; nor was there any indication in the materials sent Hittle by SBCERA that such a reference was available. (Cf. fn. 13, *post*.) SBCERA makes no assertions to the contrary in its substantive and complete response to Hittle's fiduciary duty contention before this court.

Moreover, the facts presented which pertain to the issue of SBCERA's fiduciary duty to Hittle—the contents of the two letters Hittle received from SBCERA following the termination of his employment—are undisputed. Accordingly, while the Court of Appeal was not compelled to consider the issue on rehearing (see, e.g., *People* ex rel. *Dept. of Public Works* v. *Mascotti, supra,* 206 Cal.App.2d at pp. 779-780; *Bradley* v. *Bradley* (1949) 94 Cal.App.2d 310, 312 [210 P.2d 537]), whether SBCERA met its fiduciary obligation to fully inform Hittle of his retirement options is a question of law properly considered by this court.

[11]Civil Code section 2216 provides: "A voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another."

Civil Code section 2222 provides: "Subject to the provisions of section eight hundred and fifty-two, a voluntary trust is created, as to the trustee, by any words or acts of his indicating, with reasonable certainty: [¶] 1. His acceptance of the trust, or his acknowledgment, made upon sufficient consideration, of its existence; and, [¶] 2. The subject, purpose, and beneficiary of the trust."

ation. (Cf. *Hannon Engineering, Inc.* v. *Reim, supra,* 126 Cal.App.3d at pp. 425-426.) As such, the SBCERA officers are charged with the fiduciary relationship described in Civil Code section 2228: "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind."

As this court has previously noted, "[i]n the vast development of pensions in today's complex society, the numbers of pension funds and pensioners have multiplied, and most employees, upon retirement, now become entitled to pensions earned by years of service. We believe that courts must be vigilant in protecting the rights of the pensioner against powerful and distant administrators; the relationship should be one in which the administrator exercises toward the pensioner a fiduciary duty of good faith and fair dealing." (*Symington* v. *City of Albany* (1971) 5 Cal.3d 23, 33 [95 Cal.Rptr. 206, 485 P.2d 270].)

This fiduciary relationship is judicially guarded by the application of Civil Code section 2235, which provides that "[a]ll transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence."

With these considerations in mind, we conclude that SBCERA did not fulfill its fiduciary duty to Hittle to deal fairly and in good faith.[12] The

---

[12]SBCERA must meet its fiduciary obligation to fully inform its members of their options in obtaining retirement benefits notwithstanding the extent of the Association's knowledge of each member's particular situation or entitlement. Nonetheless, the failure to satisfy this obligation is particularly egregious where the Association is on notice that a member may meet the qualifications to apply for a specific type of benefit. In the instant case, three aspects of the record support a reasonable inference that SBCERA was informed of the continuing disablement caused by Hittle's injury. First, SBCERA's second form letter, containing the handwritten reference to disability retirement, was sent *after* a County doctor (Dr. Dean Smith) had sent a letter to Santa Barbara County Special Services indicating that it would be unrealistic for Hittle to return to his job. The inference that SBCERA was then aware of Dr. Smith's diagnosis indicating permanent disability—and therefore not limited to the information contained in Dr. Bluhm's letter authorizing Hittle to return to work—is reasonable notwithstanding respondent's observation that information pertaining to workers' compensation claims, which are administered by the special services division, is not generally made available to SBCERA. (See fns. 1 and 2, *ante.*) Second, even if SBCERA was unaware of Dr. Smith's letter at the time it sent Hittle the second form letter, it is undisputed that SBCERA received a copy of Dr. Smith's letter when Hittle requested reconsideration of the Association's decision. Third, at a minimum, SBCERA was aware at the time it sent the second form letter that Hittle had been absent from work for nearly a year due to an apparently work-related injury, and should have considered the possibility that Hittle had terminated his employment with Santa Barbara County because of a permanent disability arising from that injury.

means by which SBCERA sought to inform Hittle of his options in disposing of his retirement contributions are tantamount to the misrepresentation and concealment, however "slight," prohibited by Civil Code section 2228. SBCERA's obscure handwritten notation constituted its sole effort to inform Hittle of his option to apply for disability retirement. No reference to disability retirement was contained in either the form letter or "Distribution of Retirement Contribution" form which SBCERA sent to Hittle to provide for the distribution of his retirement contributions. This omission was not remedied by the form letter's invitation to retiring employees to contact the Association if any additional information is required. These factors also support the presumption of Civil Code section 2235, that the advantage to SBCERA resulting from Hittle's choice to withdraw his retirement contributions, rather than seek a life-time allowance, was gained without sufficient consideration and under undue influence.

SBCERA's incomplete communications with Hittle are apparently standard and used routinely to inform SBCERA members of their options for disposing of their retirement contributions. It would be a small matter to add to these forms all of the retirement options available to employees. It is not this court's intention to impose unreasonable obligations upon the trustees of a pension trust. Ordinarily when an employee becomes a member of a pension plan he is provided with a booklet or other materials describing the plan in some detail. If the booklet fully and fairly describes the plan and its various options and procedures, and copies are made available, the obligation of the trustees toward a terminating employee may be satisfied by appropriate reference to the booklet itself, supplemented by a provision of forms pertaining to all available choices. (Cf. fn. 10, *ante*.)

CONCLUSION

In the absence of an adequate showing that Hittle's decision to terminate his membership in the Association was an informed one, SBCERA's denial of Hittle's request for reinstatement in order to file his application for disability retirement constituted a prejudicial abuse of discretion within the meaning of section 1094.5, subdivision (b).

The judgment of the superior court is reversed, and the cause is remanded with directions to issue a writ of mandate commanding SBCERA to reinstate Hittle's membership upon remittance of his retirement contributions plus interest and process his application for disability retirement pursuant to its established administrative procedures.

Bird, C. J., Mosk, J., Broussard, J., and Grodin, J., concurred.

KAUS, J.—I concur in the court's conclusion that there is no substantial evidence to support the trial court's determination that Hittle knew of his right to apply for disability retirement when he withdrew his contributions.

Since that conclusion disposes of the case, I see no need for the court to go out of its way to find further that SBCERA did not fulfill its fiduciary duty to deal with Hittle fairly and in good faith. Whatever shortcomings may be laid at SBCERA's door, to characterize its handling of Hittle's case as "tantamount to . . . misrepresentation and concealment, however 'slight' " (p. 393, *ante*), is making words do tricks they were not meant to perform.

LUCAS, J., Concurring and Dissenting.—I concur with the majority opinion in three respects: (1) Plaintiff need not exhaust his administrative remedies; (2) the 60-day statute of limitations in section R runs afoul of Code of Civil Procedure section 1094.6; and (3) our standard of review is the substantial evidence test.

I disagree with the majority's conclusion that plaintiff's withdrawal of his pension contribution did not constitute a knowing and intelligent waiver of his right to receive disability benefits. Under the substantial evidence test, the trial judge's decision must be affirmed if any substantial evidence, no matter how slight, supports the judgment. "[T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury." (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) Here, the conclusion that plaintiff's withdrawal was an informed one was amply supported by the handwritten notation on defendant's second letter.

The majority does not suggest that defendant's evidence was inadmissible or irrelevant to whether plaintiff's waiver was knowing. Rather, its characterization of that evidence, coupled with plaintiff's declaration and an inference from plaintiff's actions, cause the majority to conclude that no substantial evidence supports the trial court's decision. (See *ante,* pp. 388, 391.) Plaintiff's declaration states that he was unaware of his right to disability benefits and that, had he known of those rights, he would not have withdrawn from the retirement association. The majority infers from plaintiff's withdrawal that it was not an informed decision, because it was not in his economic best interest. (*Ante,* p. 391.) Neither the declaration nor inference is, in my view, sufficient to reverse the trial judge.

Plaintiff's declaration must be disregarded on appeal because a reviewing court " '*looks only at the evidence supporting the successful party, and*

*disregards the contrary showing.'* [Citation.]" (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480], italics in original.) "Of course, all of the evidence must be examined, but it is not weighed. All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact." (*Estate of Teel* (1944) 25 Cal.2d 520, 527 [154 P.2d 384].) Likewise, the majority's inference cannot be drawn, because we must give defendant "the benefit of *every reasonable inference.*" (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, p. 4236, italics in original.)

Both the declaration and inference could have been rejected as not being sufficiently credible, as well. "All issues of credibility are . . . within the province of the trier of fact. [Citation.]" (*Nestle, supra,* 6 Cal.3d 920, 925.) The trial judge could have disbelieved plaintiff's declaration in light of intrinsic facts. The declaration was prepared, for purposes of this litigation, several years after plaintiff's withdrawal. The declaration bears on a matter peculiarly within the knowledge of plaintiff—his state of mind *when he withdrew*—and not otherwise subject to verification. While none of these characteristics renders the declaration inherently untrustworthy, they do go to its weight and suggest why a factfinder might discount its credibility.

The trial judge might also have disbelieved the declaration in light of extrinsic facts. Plaintiff had access to professional advice, being represented by counsel at the time he filed his withdrawal. He also had ample opportunity to consider his options before filing his withdrawal. Both forms sent to plaintiff in connection with his withdrawal clearly stated, in printed language, that plaintiff had five years in which to make his election; he was not pressured by defendant to make his choice.

Finally, of course, the trial judge could have disbelieved plaintiff's declaration in the face of the handwritten notation from defendant which stated "Dear Mr. Hittle—if you have filed or intend to file for disability retirement you should not withdraw the above contribution." Despite the majority opinion's characterization of this notation as "inherently ambiguous and uninformative" (*ante,* p. 392), and "obscure" (*ante,* p. 393) the trial judge could have found the notation a clear, accurate instruction, specifically addressed to plaintiff, advising him not to withdraw his contribution if he contemplated disability retirement. In sum, the evidence easily supports the conclusion that plaintiff had notice that he might have been entitled to disability retirement benefits and hence that he withdrew voluntarily.

The majority opinion argues that plaintiff's withdrawal was not a knowing one, because it was against his economic best interest. Empirically, the premise that no one knowingly acts against his economic best interest is

false. People do so frequently and for a variety of reasons. The error of the majority's argument can be readily seen by assuming that plaintiff had had absolutely every datum of information bearing on his options and their consequences. If he withdrew his contribution, the majority's analysis would still lead to the conclusion that that withdrawal was not knowing and hence involuntary.

As an alternative ground for finding in plaintiff's favor, the majority concludes that defendant breached its fiduciary duty to inform its members, including plaintiff, of their retirement options. In my view, we should not consider this untimely argument. The fiduciary duty argument was first raised in plaintiff's petition for rehearing in the Court of Appeal, evidently as a result of his changing counsel after that court's decision. The Court of Appeal apparently invoked the rule that a plaintiff may not raise an issue for the first time on rehearing, a rule we have followed since at least 1915. (See *Prince* v. *Hill* (1915) 170 Cal. 192, 195 [149 P. 578]; *County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 513 [138 Cal.Rptr. 472, 564 P.2d 14].) This rule is closely related to the rule that a party may not, except in rare instances, change his theory from that upon which the case was tried. Underlying these rules is the idea that it is fundamentally unfair to the court and opposing litigants to present a new argument after having the opportunity to present any and all theories and evidence.

These rules are relaxed where the new argument relates to the court's jurisdiction or where the record contains all relevant evidence that could bear on the new theory. In such instances, considering the new theory does no prejudice to opposing party or the court. Here, though, no such considerations support ignoring these rules. Absolutely no evidence was submitted, pro or contra, on the nature and extent of defendant's fiduciary obligation to plaintiff and whether any such obligation was met. For example, the record does not disclose whether defendant may have given plaintiff a handbook of rules or bylaws when he became a member of the retirement association. All we have is evidence bearing on whether plaintiff's choice was an informed one. By relying on this theory, we have greatly prejudiced defendant.

Accordingly, for the foregoing reasons, I would affirm the trial court judgment.